**Willie C. WILLIAMS, Appellant,**

v.

**MISSOURI PROPERTY AND CASUALTY GUARANTY ASSOCIATION, Respondent.**

**No. WD 49968.**

Missouri Court of Appeals,
Western District.

May 16, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 27, 1995.

Application to Transfer Denied
Sept. 19, 1995.

William S. Nixon, Independence, for appellant.

Robert P. Numrich, Kansas City, for respondent.

Before KENNEDY, P.J., and LOWENSTEIN and HANNA, JJ.

HANNA, Judge.

The plaintiff, Willie C. Williams, was injured by a tortfeasor while on the job. He is entitled to make a claim under the workers' compensation law and to pursue a claim for damages against the negligent tortfeasor. He has received $181,987.60 in workers' compensation benefits and claims in this lawsuit that he is entitled to recover money damages from the Missouri Property and Casualty Guaranty Association (MIGA) since both the tortfeasor and its insurer have been declared insolvent. This case presents an issue as to whether a claimant who has received workers' compensation benefits for his work-related injuries may seek recovery from MIGA when the compensation carrier has asserted a subrogation lien in an amount exceeding MIGA's maximum liability.

In December 1981, plaintiff, Willie C. Williams, was injured as a result of a work-related motor vehicle accident. The accident occurred when a tractor-trailer driven by an employee of Orscheln Brothers Trucklines, Inc. (Orscheln Brothers) struck Williams as he was standing on the shoulder of Interstate 70 in Independence. At the time of the accident, Orscheln Brothers was insured by Transit Casualty Company (Transit Casualty). As a result of his injuries, Williams filed a claim under the Illinois Workers' Compensation Act and received a total of $181,987.60 in workers' compensation benefits. He also filed a negligence action against the driver of the truck and Orscheln Brothers. The workers' compensation carrier asserted a lien against Orscheln Brothers and Transit Casualty for reimbursement of any and all sums that workers' compensation had paid or would pay to Williams in the future.[1]

In March 1984, Orscheln Brothers filed bankruptcy. In December 1985, Transit Casualty was declared insolvent and ordered liquidated. Williams timely filed a proof of claim which was received by the Commissioner of Claims office on March 2, 1987. MIGA received the proof of claim on November 23, 1987. On August 1, 1991, Williams filed this action to enforce his claim against MIGA for damages in excess of the amount of the workers' compensation lien.[2] He seeks to recover the statutory maximum amount of $50,000.[3] The circuit court entered judgment in favor of MIGA. Williams appeals.

MIGA is a non-profit unincorporated legal entity which was established under

---

1. The compensation carrier has not been reimbursed for any payments made to Williams on his workers' compensation claim.

2. Williams has no uninsured motorist coverage or other liability insurance that would be applicable here.

3. Under § 375.785.4(1)(a), RSMo 1986, MIGA is liable for up to the face amount of the policy for a "covered claim" and is only obligated to pay covered claims which are in excess of $100 and less than $50,000.

§ 375.785, RSMo 1986.[4] *Clements v. Pittman*, 765 S.W.2d 589, 590 (Mo. banc 1989). The primary purpose of MIGA is to protect insureds from the effects of insolvent insurers. *Qualls v. Missouri Ins. Guar. Ass'n*, 714 S.W.2d 732, 734 (Mo.App.1986). "To protect policyholders and beneficiaries, MIGA is required to pay benefits and provide coverage, with limitations, to those whose insurance companies become insolvent." *Department of Mental Health v. Continental Sec. Life Ins. Co.*, 835 S.W.2d 349, 351–52 (Mo.App.1992). A maximum claim of $50,000 is allowed. § 375.785.3(2).

The question presented in this case is whether MIGA is obligated to pay damages to a claimant who has received workers' compensation benefits in an amount which exceeds MIGA's statutory maximum and if so, what is the proper measure of MIGA's liability. The circuit court determined that MIGA had no obligation to pay Williams because the compensation carrier would be entitled to MIGA's statutory limit as a subrogor. The court concluded that Williams did not have a "covered claim" because § 375.785.3(2) specifically excludes "any amount due any reinsurer, insurer, insurance pool or underwriting association, as subrogation recoveries or otherwise."

Williams contends the court erred in concluding that his claim for damages in excess of the workers' compensation award was not a "covered claim" under § 375.785.3(2). That statute provides, in pertinent part:

> 'Covered claim' means an unpaid claim ... presented within the time specified ... which arises out of and is within the coverage of an insurance policy to which this section applies issued by a member insurer, if such insurer becomes an insolvent insurer after September 28, 1971, and the claimant or insured is a resident of this state at the time of the insured event. . . . 'Covered claim' shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise.

MIGA argues that since Williams received workers' compensation benefits in an amount exceeding MIGA's statutory limit, there is no "unpaid claim." MIGA further argues that because the compensation carrier has asserted a lien against the employer and its insolvent insurer, Williams' claim is necessarily excluded from the category of "covered claims" under § 375.785.3(2). MIGA bases this argument on the assertion that the compensation carrier would be entitled to any funds Williams could recover from MIGA.

In support of its argument that Williams does not have a "covered claim," MIGA cites *Latter v. Autry*, 853 S.W.2d 836 (Tex.Ct.App. 1993), and *Ferrari v. Toto*, 383 Mass. 36, 417 N.E.2d 427 (1981). In both *Latter* and *Ferrari*, the guaranty fund was excused from liability because the workers' compensation carrier had paid the claimant more than he would have received under the tortfeasor's insurance policy had its insurer not become insolvent. Thus, the basis for the guaranty fund's nonliability was that the subrogation lien exceeded the tortfeasor's policy limit. In this case, MIGA has not advanced the argument that the workers' compensation award exceeded the amount Williams would have received from Transit Casualty had it remained solvent. Rather, MIGA's argument is that it has no liability because the workers' compensation award exceeded the guaranty fund's statutory limit, and the compensation carrier would be entitled to any funds that Williams might recover from MIGA.

Both parties cite *Garrett v. Overland Garage & Parts, Inc.*, 882 S.W.2d 188 (Mo.App. 1994). *Garrett* involved a claimant who had received $6,586.89 in workers' compensation benefits as a result of his work-related injuries. The claimant brought suit against the tortfeasor and received a judgment for $14,-850. The issue before the court was whether the damage award should be reduced by the subrogation amount due the compensation carrier. *Id.* at 192. In determining the extent of MIGA's liability, the court construed § 287.150, RSMo 1986, of the Workers' Compensation Act and § 375.772.2(2), RSMo

---

4. This was the statute in effect at the time Transit Casualty was declared insolvent and ordered liquidated. It has since been repealed. The Missouri Insurance Guaranty Act is now codified at §§ 375.772 to 375.779, RSMo 1994.

Supp.1993, of the Missouri Guaranty Act.[5] *Id.* at 193. In construing the plain meaning of § 375.772.2(2), the court made the following determination with respect to the right to subrogation:

> [W]hen a tortfeasor's insurer is insolvent, *any insurer who has paid a claim that would ordinarily entitle it to subrogation will not be reimbursed by MIGA* and ... no one may recover the subrogation amount from the tortfeasor of the insolvent insurer.

*Id.* at 192–93 (emphasis added).

The court concluded that the amount due the compensation carrier as subrogation was not a "covered claim" under the guaranty act because the statute precludes recovery of the subrogation amount. *Id.* at 193. While acknowledging the compensation carrier's general right to subrogation under § 287.150 against any amounts recovered by an injured party from a third party tortfeasor, the court determined that this subrogation right is limited to cases in which the insurer is solvent. *Id.* The court concluded that in view of the legislative intent of the guaranty act, the judgment should be reduced by the workers' compensation award with the remaining balance going to the claimant. *Id.* In making this determination, the court noted:

> We believe that a contrary interpretation of these two statutes would frustrate the intent of the legislature in enacting MIGA. Its purpose is to minimize the effects of insolvent insurers on innocent insureds and the public. As a means of protection, the legislature determined that the right to subrogation is lost when a tortfeasor's insurer is insolvent. Our construction of the statutes comports with this legislative intent.

*Id.*

The court further concluded that the compensation carrier has no right of recovery against the claimant, holding that:

> [T]he compensation carrier has no cause of action against the injured worker because there is no recovery of the Workers' Compensation award as a matter of law. After the judgment is modified by the Workers' Compensation award, any remaining balance does not represent a recovery of the sum paid out by the compensation carrier. That amount is unrecoverable.

*Id.*

Under *Garrett,* the proper measure of MIGA's liability is total damages less the workers' compensation award. In this case, the parties agreed that Williams had sustained lost income in the amount of $213,750 and that his medical expenses totaled $51,-729.47. The total value of his damages was $265,479.47. The "covered claim" would be the difference between the workers' compensation award and the total amount of damages. ($265,479.47 − $181,987.60 = $83,-491.87). The balance of $83,491.87 does not represent a recovery of the sum paid out by the compensation carrier and, therefore, is not excluded from the category of "covered claims" under the statute. Thus, Williams is entitled to present his claim for damages subject to the statutory limit.

The judgment is reversed and the cause remanded to the trial court with directions to allow Williams to pursue his claim for damages up to the statutory maximum.

All concur.

---

5. Section 375.772 was enacted after § 375.785 was repealed in 1989. Section 375.772.2(2) states, in pertinent part:

> 'Covered claim' shall not include any amount ... due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise, and to the extent of any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise there shall be no right of recovery by any person against a tortfeasor insured of an insolvent insurer....