James H. TILLMAN, Appellant,

v.

CAM'S TRUCKING, INC., a Missouri corporation, and Ronald Young, Respondents.

No. 23048.

Missouri Court of Appeals, Southern District, Division One.

June 26, 2000.

George E. Kapke, Kevin R. Thomas, Kapke & Willerth L.L.C., Independence, for appellant.

Stephen H. Snead, Wallace, Saunders, Austin, Brown and Enochs, P.C., Springfield, for respondents.

CROW, Presiding Judge.

The sole issue in this appeal is whether the trial court erred in applying a "set off" against the amount awarded Appellant in the judgment. The pertinent facts are undisputed.

On January 7, 1993, Appellant was employed by an entity identified in the scanty record as Ozark Utility ("OU"). The record indicates OU's business was "tractor trailer tank repair."

In the course of his employment that date, Appellant ascended a ladder to put a "decal" on a trailer OU had repaired. The trailer was owned by Cam's Trucking, Inc. ("CTI"). It was attached to a tractor.

Ronald Young, employed as a driver by CTI, entered the tractor and moved the rig. The maneuver caused the ladder to fall. Appellant was injured.

At the time of the incident, CTI's motor vehicle liability insurer was Commonwealth General Insurance Company ("Commonwealth").

Appellant filed this suit against CTI and Young. Appellant also filed a workers' compensation claim against OU.

Appellant settled the workers' compensation claim for $70,441.92. That sum—paid by OU's workers' compensation insurer—comprised medical benefits of $42,-439.74, temporary total disability of $9,153.38, and permanent partial disability of $18,848.80.

While this suit was pending, the Circuit Court of Jackson County declared Commonwealth insolvent and ordered it liquidated September 1, 1995. Thereafter, Missouri Property and Casualty Insurance Guaranty Association ("MIGA")[1] retained counsel to represent CTI and Young in this suit.

Before this suit was tried, Appellant filed a claim for uninsured motorist benefits against his own automobile liability insurer, Farmers Insurance Group ("Farmers"). Appellant settled that claim, accepting $50,000—the policy limit—from Farmers.

This suit was tried by jury March 1–2, 1999. The jury assessed 30 percent fault against Young and CTI ("Respondents") and 70 percent fault against Appellant. The verdict continued:

"We ... find the total amount of plaintiff's damages disregarding any fault on the part of plaintiff to be $300,000 which includes past economic damages including past medical damages of $53,786.31."

The trial court reduced Appellant's damages by his percentage of fault[2] and entered judgment for Appellant against Respondents for $90,000. The judgment provided that Respondents were entitled to a "set off" of $120,441.92, the aggregate amount Appellant received for his workers' compensation claim and uninsured motorist claim. Applying the "set off," the trial court, at the foot of the judgment, showed: "Judgment satisfied."

Appellant presents one point relied on; it reads:

---

1. MIGA is a "nonprofit unincorporated legal entity" created by § 375.772.1, RSMo 1994.

2. *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983); MAI 37.03 [1986 New].

"The trial court erred in entering judgment satisfying Appellant's verdict against Respondents ... because the current statutory scheme does not grant Respondents credit for the full workers' compensation benefits and uninsured motorist payments made to an injured party in that the current statutory provisions for credits protect statutory workers' compensation benefits to an injured party except the percentage of fault attributed to the thirty [sic [3]] party tortfeasor, and current statutes protect an injured party's own uninsured motorist benefits except to the extent those benefits are recovered from the insolvent insurance company and, therefore, Respondents are not entitled to full credits and Appellant is, therefore, entitled to judgment against the Respondents, less current statutory credits."

This court gathers from the argument following the point that one of the statutes constituting "the current statutory scheme" is § 375.775, RSMo 1994. It is part of the Missouri Property and Casualty Insurance Guaranty Association Act [4] ("the MIGA Act"). Section 375.775 has remained unchanged since 1991, hence it was in force when Appellant was injured. It reads, in pertinent part:

"1. The association[ [5]] shall:

(1) Be obligated to the extent of the covered claims existing prior to the date of entry of a ... judgment ... that an insolvent insurer exists ..., but obligation shall include only that amount of each covered claim which is in excess of one hundred dollars and is less than three hundred thousand dollars....

(a) ...

(b) In the case of claims arising from bodily injury ..., the amount of any such award shall not exceed the claimant's reasonable expenses incurred for necessary medical, surgical, X-ray ... services ... including prosthetic devices and necessary ambulance, hospital, professional nursing, and any amounts lost or to be lost by reason of claimant's inability to work and earn wages....

(2) Be deemed the insurer to the extent of its obligations on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent;

...."

The term "covered claim" in the MIGA Act is defined in § 375.772.2(2), RSMo 1994:

" 'Covered claim', an unpaid claim ... which arises out of and is within the coverage of an insurance policy to which [the MIGA Act applies].... 'Covered claim' shall not include any amount ... due any ... insurer ... as subrogation recoveries or otherwise, and to the extent of any amount due any ... insurer ... as subrogation recoveries or otherwise there shall be no right of recovery by any person against a tortfeasor insured of any insolvent insurer ... [.]"

The above definition has remained unchanged since 1992, hence it was in force when Appellant was injured.

On the date of Appellant's injury, the statute governing "subrogation" of an employer in a workers' compensation case was 287.150, RSMo Cum.Supp.1992.[6] Subsection 3 thereof read, in pertinent part:

---

3. This court infers Appellant meant "third," not "thirty."

4. Section 375.771, RSMo 1994, provides that §§ 375.771–.779 shall be referred to as the "Missouri Property and Casualty Insurance Guaranty Association Act."

5. The MIGA Act uses the noun "association" to refer to the "nonprofit unincorporated legal entity" created by § 375.772.1, RSMo

1994, and named "Missouri Property and Casualty Insurance Guaranty Association." As explained *supra,* this opinion refers to that entity as "MIGA."

6. In *Rogers v. Home Indemnity Co.,* 851 S.W.2d 672, 674 (Mo.App. W.D.1993), the court noted that although the term "subrogated" appears in § 287.150.1, RSMo Cum. Supp.1992, an earlier case, *O'Hanlon Reports, Inc. v. Needles,* 360 S.W.2d 382 (Mo.App.

"Whenever recovery against the third person is effected by the employee . . ., the employer shall pay from his share of the recovery a proportionate share of the expenses of the recovery, including a reasonable attorney fee. After the expenses and attorney fee have been paid the balance of the recovery shall be apportioned between the employer and the employee . . . in the same ratio that the amount due the employer bears to the total amount recovered. . . . Any part of the recovery . . . paid to the employee . . . shall be treated . . . as an advance payment by the employer on account of any future installments of compensation."

In *Ruediger v. Kallmeyer Brothers Service*, 501 S.W.2d 56 (Mo. banc 1973), the Supreme Court of Missouri adopted a formula for apportioning a recovery from a third party under § 287.150.3, RSMo 1969. That version of § 287.150.3 was essentially identical to the version in RSMo Cum. Supp.1992 (quoted above).

In *Ruediger*, an injured employee received workers' compensation benefits from his employer and sued a third party for the same injury, winning a judgment for $140,458.62. *Id.* at 59. The employee's attorney fee in the suit was $46,819.54. *Id.* At the time of the recovery from the third party, the employer had paid the employee workers' compensation benefits totaling $13,957.62. *Id.* However, the employee was entitled to benefits "for life." *Id.* at 57.

The opinion declared the recovery from the third party should be apportioned as follows:

1962), held the statute "does not give a true subrogation right to the employer." According to *Rogers*, *O'Hanlon* concluded "it is indemnity, and not true subrogation, for which the act provides." *Rogers*, 851 S.W.2d at 674–75.

7. As this court understands the opinion in *Garrett*, the court applied the version of § 375.772.2(2) in RSMo Cum.Supp.1993. *Id.* at 192. That was the version in force when

"(1) the amount of $46,819.54 is deducted from the amount of $140,458.62, leaving a balance of $93,639.08; (2) the ratio is as $13,957.62 bears to $140,458.62; and (3) when the balance of $93,639.08 is apportioned at that ratio, the employer should be paid $9305.08 and the employee should be paid $84,334.00."

*Id.* at 59–60.

The Supreme Court further held the amount paid the employee "should be treated as an advance payment on account of any future installments of compensation." *Id.* at 59.

In *Garrett v. Overland Garage & Parts, Inc.*, 882 S.W.2d 188 (Mo.App. E.D.1994), an employee was injured in the course of his employment. *Id.* at 190. The injury occurred on the premises of a third party. *Id.* The employee filed a workers' compensation claim against his employer and a lawsuit against the third party. *Id.* At the time of the injury, the third party was insured; however, the insurer subsequently became insolvent. *Id.* at 191.

The employee received workers' compensation benefits totaling $6,586.89. *Id.*

The lawsuit against the third party resulted in a $14,850 verdict for the employee. *Id.* The third party moved the trial court to reduce the judgment by the amount of workers' compensation benefits "pursuant to § 375.772.2(2)." *Id.* The trial court denied the motion. *Id.*

On appeal by the third party, the appellate court held:

"Section 375.772.2(2)[ [7]] states that 'a covered claim shall *not* include any amount due . . . any insurer . . . as subrogation recoveries or otherwise, and to

the opinion was written. However, the version of § 375.772.2(2) in force when the employee in *Garrett* was injured (August 17, 1990) was the version in RSMo Cum.Supp. 1989. In comparing the two versions, it appears to this court that the provision in the 1993 version pertinent to the decision in *Garrett* was identical to its counterpart in the 1989 version.

the extent of any amount due ... any insurer as subrogation recoveries or otherwise there shall be no recovery by any person against a tortfeasor insured of an insolvent insurer.' (emphasis added). The plain meaning of the statute is as follows. First, when a tortfeasor's insurer is insolvent, any insurer who has paid a claim that would ordinarily entitle it to subrogation will not be reimbursed by MIGA and second, no one may recover the subrogation amount from the tortfeasor of the insolvent insurer. Applying this interpretation to the case at bar, we find that the judgment must be deemed satisfied for the amount due the compensation carrier by right of subrogation because it is not a covered claim under MIGA and the statute precludes recovery of the subrogation amount from the tortfeasor. Therefore, the judgment is modified by the $6,586.89 [the employee] received from the Workers' Compensation carrier.

....

We find ... that the general right of subrogation in § 287.150 is limited to cases where the insurer is solvent. In the case of an insolvent insurer, the injured worker cannot recover the amount that would be the subject of a subrogation claim. Therefore, the compensation carrier has no cause of action against the injured worker because there is no recovery of the Workers' Compensation award as a matter of law. After the judgment is modified by the Workers' Compensation award, any remaining balance does not represent a recovery of the sum paid out by the compensation carrier. That amount is unrecoverable."

*Id.* at 192–93.

The *Garrett* rationale was applied in *Williams v. Missouri Property and Casualty Guaranty Association,* 904 S.W.2d 10 (Mo.App. W.D.1995). There, a worker "was injured by a tortfeasor while on the job." *Id.* at 11. He filed a workers' compensation claim against his employer and a lawsuit against the tortfeasor. *Id.* The employer's workers' compensation insurer asserted a lien against the tortfeasor and its liability insurer for all workers' compensation benefits the worker had received or would receive in the future. *Id.* The tortfeasor subsequently "filed bankruptcy," and its liability insurer was declared insolvent and ordered liquidated. *Id.* The worker, who had received $181,987.60 in workers' compensation benefits, sued MIGA for damages in excess of the amount of the workers' compensation insurer's lien. *Id.* At that time, the limit of MIGA's liability was $50,000. *Id.*

The trial court in *Williams* held MIGA had no duty to pay the worker because the workers' compensation insurer "would be entitled to MIGA's statutory limit as a subrogor [sic]." *Id.* at 12.

The trial court reasoned that the worker did not have a "covered claim" because § 375.785.3(2) excluded any amount due any insurer as a subrogation recovery.[8] *Id.*

On appeal by the worker, the appellate court held:

"Under *Garrett,* the proper measure of MIGA's liability is total damages less the workers' compensation award. In this case, the parties agreed that [the worker] had sustained lost income in the amount of $213,750 and that his medical expenses totaled $51,729.47. The total value of his damages was $265,479.47. The 'covered claim' would be the difference between the workers' compensation award and the total amount of damages. ($265,479.47—$181,987.60 = $83,491.87). The balance of $83,491.87 does not represent a recovery of the sum paid out by the compensation carrier and, therefore, is not excluded from the category of 'covered claims' under the statute. Thus, [the worker] is entitled to present

8. Section 375.785.3(2) was repealed in 1989.

his claim for damages subject to the statutory limit."

*Id.* at 13.

*Garrett* and *Williams*, as understood by this court, hold that where (1) an injured worker receives workers' compensation benefits from his employer's workers' compensation insurer, (2) the worker sues a third party for the same injury, (3) the third party's liability insurer becomes insolvent and is ordered liquidated, and (4) MIGA is thence deemed the insurer of the third party, the following rules apply:

A. The amount received by the worker as workers' compensation benefits from his employer's workers' compensation insurer is not a "covered claim" under the MIGA Act, hence no one can recover that amount from the third party or MIGA.

B. Any judgment the worker obtains against the third party must be deemed satisfied to the extent of the amount of workers' compensation benefits received by the worker from his employer's workers' compensation insurer.

It is arguable that the amount in "A" and "B" above should not be the entire sum of workers' compensation benefits, but only the amount to which the employer's workers' compensation insurer would be entitled under the *Ruediger* formula, 501 S.W.2d at 59–60.

However, no *Ruediger* calculation was made in *Garrett* or *Williams*. Both cases treated the entire amount of workers' compensation benefits paid by the workers' compensation insurer to the injured worker as a "subrogation" recovery due an insurer within the meaning of § 375.772.2(2). As a result of that treatment, that amount could not be recovered from the third party or MIGA by anyone, and the worker's judgment against the third party was deemed satisfied to the extent of that amount.

■ Honoring the doctrine of *stare decisis,*[9] this court considers the entire $70,441.92 Appellant received in settlement of his workers' compensation claim to be an amount due OU's workers' compensation insurer as a "subrogation" recovery within the meaning of § 375.772.2(2), RSMo 1994. Under *Garrett* and *Williams*, the effect of that treatment is that Appellant's judgment against Respondents is deemed satisfied to the extent of $70,441.92.

■ Appellant argues it is wrong to apply *Garrett* and *Williams* to his workers' compensation settlement because an amendment to § 287.150.3, enacted after his injury, changed the formula for apportioning a recovery by an injured employee from a third party where an employer or its workers' compensation insurer is "subrogated"[10] to the employee's rights against the third party.

The amendment to which Appellant refers was enacted during the First Regular Session of the Eighty-seventh General Assembly and took effect August 28, 1993. Laws of Missouri 1993, S.B. 251, § A, pp. 763–802. Section 287.150 has remained unchanged since then. Subsection 3 of § 287.150, as it now reads, is set forth below.[11]

9. Under the doctrine of *stare decisis,* a court follows earlier judicial decisions when the same point arises again in litigation. Black's Law Dictionary (7th Ed. West Group 1999) p. 1414.

10. Footnote 6, *supra.*

11. Section 287.150.3, as of the date of this opinion, reads:

"Whenever recovery against the third person is effected by the employee ..., the employer shall pay from his share of the recovery a proportionate share of the expenses of the recovery, including a reasonable attorney fee. After the expenses and attorney fee have been paid, the balance of the recovery shall be apportioned between the employer and the employee ... in the same ratio that the amount due the employer bears to the total amount recovered if there is no finding of comparative fault on the part of the employee, or the total damages determined by the trier of fact if there is a finding of comparative fault on the part of the employee.... Any part of the recov-

Appellant insists: "We must look at the workers' compensation law ... in effect at the time of the claimed credits to determine subrogation rights of the Respondents." As authority for that proclamation, Appellant cites *Williams,* 904 S.W.2d at 10.

This court has carefully searched *Williams* and has found nothing there supporting Appellant's hypothesis. Furthermore, Appellant's hypothesis is refuted by *Liberty Mutual Insurance Co. v. Garffie,* 939 S.W.2d 484 (Mo.App. E.D.1997).

In *Garffie,* a worker was injured in a work-related accident July 9, 1988. *Id.* at 485. He received workers' compensation benefits totaling $86,482.40 from his employer's workers' compensation insurer. *Id.* He filed a "products liability action" against a third party for the same injury and settled it for $150,000. *Id.*

The employer and its workers' compensation insurer filed a petition for declaratory judgment to determine how much of the $150,000 they were entitled to under § 287.150.3. *Id.* The version of that statute in force on the date the worker was injured was the version in RSMo 1986. *Id.*

The appellate court said: "The only dispute between the parties [in the trial court] was whether the 1993 amended version of § 287.150.3 should be applied or whether the earlier version applied." *Id.* The opinion held:

"Article I, Section 13 of the Missouri Constitution prohibits retroactive laws which take away or impair vested rights acquired under existing law or create a new duty, or attach a new disability in respect to transactions or considerations already past. . . .

... At the time of Garffie's accident and the date he settled his worker's [sic] compensation claim, [the employer and its workers' compensation insurer] were entitled to full subrogation rights under the *Ruediger* formula, regardless of whether the employee was comparatively at fault. The subsequent change in the statute, which required a reduction in the employer's subrogation rights if the employee's third party recovery was reduced because of comparative fault, impaired the employer's vested rights under existing law.

Prior to the 1993 amendment comparative fault was irrelevant. The 1993 amendment served the purpose of making it relevant. It did so without a statutory expression for retroactive application. The dispute in this case is whether or not the employer should receive less money from the recovery of the third party settlement by 'sharing' the employee's comparative fault reductions. The dispute implicates substantive rights which may only be valued under the pre–1993 statute."

*Id.* at 486–87[2, 3].

The appellate court in *Garffie* affirmed a judgment apportioning the recovery from the third party pursuant to the *Ruediger* formula. *Id.* at 487.

The record furnished this court does not reveal when Appellant received his workers' compensation settlement. The only date supplied this court that is pertinent under *Garffie* is January 7, 1993, the date Appellant was injured.

Consistent with *Garffie's* rationale, this court holds the "subrogation" rights of OU and its workers' compensation insurer in regard to Appellant's recovery against Re-

ery found to be due to the employer [or] the employee ... shall be paid forthwith and any part of the recovery paid to the employee ... shall be treated by [him] as an advance payment by the employer on account of any future installments of compensation in the following manner:

(1) The total amount paid to the employee ... shall be treated as an advance pay-

ment if there is no finding of comparative fault on the part of the employee; or

(2) A percentage of the amount paid to the employee ... equal to the percentage of fault assessed to the third person from whom recovery is made shall be treated as an advance payment if there is a finding of comparative fault on the part of the employee."

spondents in this case are to be determined under the version of § 287.150.3 in force on the date of Appellant's injury. That was the date OU and its workers' compensation insurer became liable to Appellant for workers' compensation benefits. It would be illogical—and contrary to *Garffie*—to hold the rights conferred on OU and its workers' compensation insurer by § 287.150.3 at the time of Appellant's injury were thereafter altered by an amendment to that statute.

As we have seen, under the version of § 287.150.3 in force when Appellant was injured, the "subrogation" rights of the workers' compensation insurer against the third party were determined by the *Ruediger* formula.[12] However, in both *Garrett* and *Williams,* where the third party's liability insurer was *insolvent,* the court did not make a *Ruediger* calculation, but instead held the amount received by the injured worker was not a "covered claim" under the MIGA Act, hence no one could recover that amount from the third party or MIGA, and any judgment the worker obtained against the third party would be deemed satisfied to the extent of that amount.

Accordingly, this court holds Appellant's $90,000 judgment against Respondents must be deemed satisfied to the extent of $70,441.92, the full amount of Appellant's workers' compensation settlement.[13] That leaves $19,558.08 of the judgment unsatisfied and brings this court to its next task—determining the effect of Appellant's $50,000 uninsured motorist settlement.

■ Appellant maintains Respondents "are entitled to no credits against Appellant's judgment on the basis of a payment to Appellant by his own uninsured motorist carrier." Appellant bases that theory on § 379.203, RSMo 1994. It has remained unchanged since 1991 and reads, in pertinent part:

"2. ... the term 'uninsured motor vehicle' shall ... be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified herein because of insolvency.

3. An insurer's insolvency protection shall be applicable only to accidents occurring during a policy period in which its insured's uninsured motorist coverage is in effect where the liability insurer of the tortfeasor becomes insolvent within two years after such an accident. Nothing herein contained shall be construed to prevent any insurer from affording insolvency protection under terms and conditions more favorable to its insureds than is provided hereunder.

4. In the event of payment to any person under the coverage required by this section ... the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is

---

**12.** At page 13 of Appellant's brief, he purports to calculate the "subrogation" recovery under the *Ruediger* formula using "a one-third (⅓) attorney fee." However, the brief furnishes no reference to the legal file or transcript showing such a fee (or any attorney fee, for that matter), and this court's search of the record has turned up no evidence of any attorney fee or litigation expense.

**13.** Parenthetically, this court notes that if Appellant, in obtaining his $90,000 judgment against Respondents, incurred attorney fees and expenses amounting to one-third of that amount (see footnote 12, *supra* ), the "subro-

gation" recovery to which OU's workers' compensation insurer would ordinarily be entitled—calculated per the *Ruediger* formula—would be as follows: (1) the $30,000 attorney fee and expenses would be deducted from the $90,000, leaving $60,000; (2) the ratio of $70,441.92—the workers' compensation settlement—to $90,000 would be calculated; (3) that ratio is .7827; (4) the "subrogation" recovery would be 78.27 percent of $60,000, i.e., $46,962. Treating Appellant's judgment satisfied to the extent of that amount would leave $43,038 unsatisfied.

made, including the proceeds recoverable from the assets of the insolvent insurer; provided, however, with respect to payments made by reason of the coverage described in subsections 2 and 3 above, the insurer making such payment shall not be entitled to any right of recovery against such tortfeasor in excess of the proceeds recovered from the assets of the insolvent insurer of said tortfeasor."

Appellant presents two reasons which, according to him, demonstrate the trial court erred in ruling that $50,000 of Appellant's judgment against Respondents was deemed satisfied by the $50,000 Appellant received from Farmers in settlement of his uninsured motorist claim. This court shall address the second reason first. That reason is, in Appellant's words:

"The accident giving rise to this claim occurred on January 7, 1993. Commonwealth ... was declared insolvent in September of 1995. That is well over two years after the accident in which Appellant was injured. Appellant's uninsured motorist carrier would have been required to provide uninsured motorist coverage for two years following this accident. 379.203.3 RSMo. Any payment made to an insured when the tortfeasor becomes insolvent more than two years after the injury is made as a volunteer. Nothing in § 379.203 RSMo provides a subrogation right to an uninsured motorist carrier making a payment as a volunteer."

The flaw in the above reason is that subsection 3 of § 379.203 (quoted earlier) allows a motor vehicle insurance carrier to provide "insolvency protection" to its insured for a period exceeding two years after an accident where the tort-feasor's liability insurer at the time of the accident later becomes insolvent. Appellant's lawyer conceded at oral argument that no copy of Appellant's insurance policy with Farmers is in the record; consequently, this court cannot determine whether said policy provided Appellant the extended "insolvency protection" allowed by § 379.203.3.

With the record in that posture, this court is unwilling to assume Farmers paid Appellant $50,000—the policy limit—as a "volunteer." The only reasonable inference is that Appellant had a valid claim against Farmers under the uninsured motorist coverage in his policy, hence Farmers was vested with the rights conferred by subsection 4 of § 379.203. That assumption destroys the factual hypothesis of Appellant's second reason.

The first reason advanced by Appellant in support of his theory that the trial court erred in ruling that $50,000 of Appellant's judgment against Respondents was deemed satisfied by the $50,000 Appellant received from Farmers in settlement of his uninsured motorist claim is based on subsection 4 of § 379.203 (quoted earlier). Appellant's theory, as this court fathoms it, is that under the statute, Farmers' right to the "proceeds" of Appellant's judgment against Respondents is limited to the amount recovered from assets of Respondents' insolvent insurer (Commonwealth). Appellant declares: "There is no indication in the record that Respondents have recovered anything from the insolvent insurer's estate[.]" Consequently, reasons Appellant, as nothing has been recovered from Commonwealth's assets, no part of the $50,000 he received from Farmers should be treated as satisfying the judgment.

■ This court sees no reason to treat the claim Farmers would ordinarily have against Respondents any differently than the "subrogation" claim OU's workers' compensation insurer would ordinarily have against Respondents. Under the interpretation of § 375.772.2(2) in *Garrett*, 882 S.W.2d 188, and *Williams*, 904 S.W.2d 10, any amount ordinarily due any insurer as a "subrogation" recovery against a tortfeasor whose insurer has been adjudicated insolvent is not a "covered claim" under the MIGA Act. Consequently, (1) no one can recover that amount from the tortfea-

sor or MIGA, and (2) any judgment the injured party obtains against the tortfeasor must be deemed satisfied to the extent of such amount.

That treatment is not harsh to Appellant. Had Commonwealth not become insolvent, Appellant presumably could have collected his $90,000 judgment from Commonwealth. However, under the *Ruediger* formula, OU's workers' compensation insurer would have been entitled to at least $46,962 of the recovery (see footnote 13, *supra*) and Farmers would evidently have been entitled to $50,000 of the recovery (*see State ex rel. Manchester Insurance and Indemnity Co. v. Moss*, 522 S.W.2d 772 (Mo. banc 1975); *Kroeker v. State Farm Mutual Automobile Insurance Co.*, 466 S.W.2d 105 (Mo.App.1971)). In that scenario, every cent of Appellant's judgment against Respondents would be taken by OU's workers' compensation insurer and Farmers.

The trial court's judgment produces the same result insofar as Appellant is concerned. He keeps his $70,441.92 workers' compensation settlement and his $50,000 uninsured motorist settlement. The adverse financial consequences of Commonwealth's insolvency are borne by OU's workers' compensation insurer and Farmers, who have no way to recover the sums they paid Appellant.[14]

Judgment affirmed.

PARRISH and SHRUM, JJ., concur.

---

**14.** Had the trial court not shown Appellant's judgment satisfied, Appellant could apparently have collected $90,000 from MIGA. That would have produced the anomaly of Appellant and his lawyer receiving a windfall because of Commonwealth's insolvency. That is, Appellant and his lawyer would have ended up with $90,000, which they would not have ended up with had Commonwealth remained solvent.