Angela D. HALMON, Plaintiff,

v.

JONES LANG WOOTTON USA et al., Defendants.

No. CIV.A.02–0046(RMU).

United States District Court, District of Columbia.

Jan. 13, 2005.

Charles Clinton Parsons, Charles C. Parsons & Associates, Chartered, Washington, DC, for Plaintiff.

Mary Malloy Dimaio, Law Offices of Maher & Associates, Towson, MD, Edward J. Lopata, Scott Anthony Thomas, Tydings & Rosenberg LLP, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION

DENYING INTERSTATE CLEANING CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGEMENT;

DENYING JONES LANG WOOTTON USA'S MOTIONS FOR LEAVE TO LATE FILE; AND DISMISSING AS MOOT THE PLAINTIFF'S MOTION TO STRIKE

URBINA, District Judge.

### I. INTRODUCTION

This matter comes before the court on Interstate Cleaning Corporation's ("ICC") renewed motion for partial summary judgment, Jones Lang Wootton USA's ("JLW") motions for leave to late file, and the plaintiff's motion to strike JLW's proposed late filings. The plaintiff, Angela Halmon, slipped, fell and hurt herself in Union Station and now seeks $20 million in compensatory and punitive damages. She brings suit against JLW, a partnership that manages Union Station, and ICC, a corporation under contract to JLW to provide cleaning services at Union Station, claiming that ICC negligently maintained the premises and that JLW is vicariously liable for ICC's negligence.

On March 30, 2004, this court granted in part JLW's motion for summary judgment but expressly left open the possibility that JLW could be vicariously liable for ICC's alleged negligence. The court also struck ICC's motion for summary judgment as unclear and set a new briefing schedule for all parties regarding ICC's and JLW's liability. Because the plaintiff and ICC adhered to that schedule and JLW did not, the court deems JLW to have conceded that it can be found vicariously liable for ICC's alleged negligence. Because ICC improperly bases its motion for partial summary judgment on the Missouri Property and Casualty Insurance Guaranty Association ("MIGA") Act, Mo. STAT. ANN.

§§ 375.771 *et seq.*, the court denies ICC's motion.

## II. BACKGROUND

### A. Factual Background

In May 1999, the plaintiff was visiting the food court on the lower level of Union Station when she slipped and fell on a section of the marble floor that an ICC employee recently mopped. Mem. Op. (Mar. 30, 2004) at 2. As a result of her fall, the plaintiff states that she suffered multiple injuries to her right leg and hip and incurred significant medical bills. *Id.* At the time of the plaintiff's fall, ICC was under contract to JLW to provide cleaning services at Union Station. *Id.*

ICC is registered as a Missouri corporation and has its principal place of business in that state. ICC Statement of Material Facts ("ICC Statement") ¶ 4. When the incident occurred, Reliance Insurance Company ("Reliance") insured ICC against claims such as the ones presented in this case. *Id.* An endorsement in ICC's Reliance policy states that if Reliance becomes insolvent, MIGA will pay "covered" claims against ICC. *See id.* ¶ 7. On October 3, 2001, a Pennsylvania state court declared Reliance insolvent and entered an Order of Liquidation. *Id.*

### B. Procedural History

The plaintiff filed her complaint in January 2002, following up six weeks later with an amended complaint. In April 2002, both ICC and JLW filed answers. JLW also filed a crossclaim against ICC for indemnification and contribution. In May 2002, ICC filed an answer to JLW's cross-claim. In June 2003, after discovery closed, ICC filed a motion for partial summary judgment on the plaintiff's claim and JLW's cross-claim. In July 2003, JLW filed a motion for summary judgment.

In its March 2004 opinion, this court granted in part JLW's motion for summary judgment, holding that ICC and JLW had a contractee-contractor relationship, but that neither the plaintiff nor JLW provided sufficient information for the court to determine whether the inherent-danger or peculiar-risk doctrines should apply.[1] The court struck ICC's motion for partial summary judgment, holding that ICC failed to provide sufficient information for the court to render a judgment. Furthermore, the court set a revised briefing schedule for both parties. The court ordered that:

> The plaintiff may submit a supplemental memorandum of no more than 10 double-spaced pages on the applicability of the inherent-danger and peculiar-risk doctrines, including whether the court may determine the doctrines' application on summary judgment, by April 22, 2004. In response, JLW may file a supplemental memorandum of no more than 10 double-spaced pages by May 20, 2004.

Order (Mar. 30, 2004) at 1. As to ICC, the court ordered that:

> ICC may resubmit a motion by April 22, 2004 that clearly explains the basis for applying Missouri law and sets forth arguments citing to supporting legal authority interpreting Missouri law. Any

---

1. In its March opinion, after explaining the well-established rule that an employer of an independent contractor is not liable for injuries that the contractor causes, *Traudt v. Potomac Elec. Power Co.*, 692 A.2d 1326, 1330 (D.C.1997), this court noted that even if an employee is an independent contractor, the employer may still be liable, as the independent-contractor rule "bristles with a series of long-standing exceptions," *Wilson v. Good Humor Corp.*, 757 F.2d 1293, 1301 (D.C.Cir. 1985). Specifically, the court pointed to the inherent-danger and peculiar-risk doctrines, either of which would subject the employer of an independent contractor to liability for the independent contractor's acts under certain circumstances. *See* RESTATEMENT (SECOND) OF TORTS §§ 413, 427.

response filed by the plaintiff or JLW likewise must cite to supporting legal authority.

*Id.*

The plaintiff complied with the above deadlines and submitted a supplemental memorandum on April 21, 2004. ICC also complied with the above deadlines and submitted a motion for summary judgment on April 22, 2004 (to which the plaintiff and ICC filed a timely opposition and reply, respectively). Nearly six months after the April 2004 deadlines, JLW arose from its slumber and moved to late file a response to the plaintiff's supplemental memorandum and an opposition to ICC's motion for partial summary judgment. As justification for its delay, JLW offered what the court cannot help but characterize as the lame excuse that counsel "did not place the due date on her calendar." JLW's Mot. for Leave to File Supp. Mem. ¶ 4; JLW's Mot. for Leave to File Opp'n ¶ 4; *cf. Fox v. Am. Airlines, Inc.,* 389 F.3d 1291, 1294 (D.C.Cir.2004) (noting that reference to email malfunction is no better than "the classic 'my dog ate my homework' line" and "plainly unacceptable"). Unhappy with JLW's "dump truck load of [late] documents," the plaintiff promptly moved to strike JLW's late filing. Pl.'s Mot. to Strike at 2. Unhappy with the plaintiff's "poor form," JLW submitted a rather acrimonious opposition to the motion to strike. JLW's Opp'n to Pl.'s Mot. to Strike. Meanwhile, ICC jumped in the fray with its own opposition to JLW's late-filings. ICC Opp'n.

## III. ANALYSIS

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any materi-

al fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene,* 164 F.3d at 675. If the evidence "is merely colorable,

or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

## B. The Court Denies ICC's Motion for Partial Summary Judgment

■ As indicated above, ICC's insurance policy with Reliance stated that if Reliance became insolvent, MIGA would pay certain claims against ICC. Created to minimize the impact of insolvent insurers on innocent insureds and the public, MIGA is a non-profit unincorporated legal entity the membership of which consists of insurers transacting certain types of insurance business within Missouri. *Alvey, Inc. v. Mo. Ins. Guar. Ass'n,* 922 S.W.2d 804, 807 (Mo.Ct.App.1996); *Williams v. Mo. Prop. & Cas. Guar. Ass'n,* 904 S.W.2d 10, 11–12 (Mo.Ct.App.1995); *Garrett v. Overland Garage & Parts, Inc.,* 882 S.W.2d 188, 193 (Mo.Ct.App.1994). Specifically, MIGA protects "policy-holders and beneficiaries [by] pay[ing] benefits and provid[ing] coverage, with limitations, to those whose insurance companies become insolvent." *Williams,* 904 S.W.2d at 12 (internal citations and quotations omitted).

In its renewed motion for partial summary judgment, ICC argues that the MIGA Act, Mo. Stat. Ann. §§ 375.771 *et seq.,* limits the ability of both the plaintiff and JLW to recover against ICC. ICC Mot. for Partial Summ. J. ("ICC Mot.") at 1. First, ICC claims that the MIGA Act

forbids the plaintiff from collecting any damages until she has exhausted her right to recovery under the other insurance policies. *Id.* at 1, 9–11. Second, ICC asserts that the MIGA Act limits the plaintiff's damages to reasonable expenses for necessary medical services, rather than pain-and-suffering, punitive damages, or past and future wages. *Id.* at 1, 11–13. Finally, ICC contends that the MIGA Act bars the plaintiff as well as JLW and its insurer from recovering against ICC as a joint tortfeasor. *Id.* at 1–2, 13–16.

A footnote in ICC's motion captures the essence of ICC's reasoning for applying the MIGA Act at this stage of the case. ICC Mot. at 10 n. 7. As ICC asserts, "[u]nder applicable Missouri law, ICC as the innocent insured of an insolvent insurer has an absolute right at the outset to the protections afforded under [the] MIGA [Act]." *Id.* Thus, as ICC argues, the plaintiff and JLW cannot sue ICC without first taking into account the MIGA Act's various procedural requirements and limitations on remedies. *Id.*

True, ICC is in the undesirable position having contracted with a now-insolvent insurer. But ICC's invocation of the MIGA Act at this stage of the litigation puts the cart before the horse. Unlike the cases on which ICC relies,[2] the plaintiff and cross claimant here do not bring suit against an insurance guaranty association, this court has not yet determined liability on the

---

2. ICC principally relies on the Missouri Court of Appeals decision in *Havens Steel Co. v. Missouri Prop. and Cas. Ins. Guar. Ass'n,* 1997 WL 104503 (Mo.App.1997), 1997 Mo.App. LEXIS 390. *See generally* ICC's Mot. The Supreme Court of Missouri reversed the trial court in *Havens,* which the appellate court had affirmed. *Havens Steel Co. v. Missouri Prop. and Cas. Ins. Guar. Ass'n,* 956 S.W.2d 906 (Mo.1997) (stating that the "trial court and the Court of Appeals limited [MIGA's] obligation to unpaid claims filed by injured third-party claimants. We granted transfer

... and reverse the judgment of the trial court"). Presumably ICC is aware that under Article V, Section 10 of the Missouri Constitution, once the Missouri Supreme Court takes an appellate case on transfer, the appellate court's decision becomes *functus officio. Garrett v. State Dept. of Public Health and Welfare,* 558 S.W.2d 679 (Mo.App.1977) (noting that, on transfer to the state Supreme Court, "the opinion of the Court of Appeals, except insofar as recognized by the Supreme Court in its determination of the case ... is of no precedential effect").

underlying claims, and the plaintiff has not yet settled any of her claims. *Cf.* ICC Mot. at 9–11 (citing cases in which, *inter alia,* plaintiffs attempted to recover against insurance guaranty associations). Thus, because the plaintiff has not sought to pursue her claims directly with MIGA or otherwise involve MIGA, talk of the MIGA Act is simply premature. *See Alvey,* 922 S.W.2d at 808 (noting that "[a]n insured of an insolvent insurer who has a judgment against it is entitled to file the judgment with MIGA as a covered claim. MIGA is then to process the claim and determine which part of the judgment constitutes a covered claim based upon information provided by the insured").[3] Accordingly, because ICC premises its entire motion for partial summary judgment on the applicability of the MIGA Act, the court denies ICC's motion. Cognizant, however, that ICC may wish to raise anew its arguments on the MIGA Act once or if the MIGA Act becomes applicable, the court denies ICC's motion without prejudice.

### B. The Court Deems JLW's Late Filing a Concession of the Plaintiff's Supplemental Memorandum

 Parties have an obligation to monitor the court's docket and keep apprised of relevant deadlines. *Fox,* 389 F.3d at 1293. The Local Rules of this court express this obligation in Rule 7(b), which states that

[w]ithin 11 days of the date of service or at such other time as the Court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion. If such a memorandum is not filed within the prescribed time, the Court may treat the motion as conceded.

LCvR 7(b). Thus, as the D.C. Circuit has stated, "[w]here the district court relies on the absence of a response as a basis for treating the motion as conceded, we honor its enforcement of the rule." *Fox,* 389 F.3d at 1295 (quoting *Twelve John Does v. Dist. of Columbia,* 117 F.3d 571, 577 (D.C.Cir.1997)).

As to JLW's failure to respond to the plaintiff's supplemental memorandum, the court acknowledges that the text of Local Rule 7(b) refers only to motions and oppositions thereto. LCvR 7(b). Given the posture and background of this case, however, the rationale of Rule 7(b) applies equally to JLW's failure to respond to the plaintiff's supplemental memorandum by the court-ordered deadline. First, JLW certainly had notice of the importance of the filing: the whole point was to demonstrate whether or not JLW could be vicariously liable for the acts of its contractee pursuant to the inherent-danger or peculiar-risk doctrines. *See generally* Mem. Op. (Mar. 30, 2004). As even a cursory reading of this court's March 30 opinion would indicate, the court was unable to

---

**3.** ICC reads *Alvey, Inc. v. Missouri Ins. Guar. Ass'n,* 922 S.W.2d 804, 808 (Mo.App.1996), for the proposition that the procedural requirements and limitations on remedies in the MIGA Act apply to the instant case, even though MIGA is not a party and has not otherwise become involved. ICC Mot. at 3–4. *Alvey* does not say that much. In *Alvey,* MIGA sought to invoke the rights of the insolvent insurer against Alvey (the corporation that had retained the insolvent insurer) to prevent Alvey's recovery. *Alvey,* 922 S.W.2d at 809. MIGA's actual involvement in *Alvey* is what sets that case apart from the instant case; as the court in *Alvey* noted, "MIGA provided a defense as the insolvent insurer would have been required to do." *Id.* Thus, although ICC insists that "MIGA has the authority, duty and obligation to involve itself in this case," ICC Mot. at 5, the reality is that MIGA is not presently involved in this case—regardless of its purported duty to get involved—and discussion of the MIGA Act's procedures and requirements is therefore, at least at present, premature.

resolve the vicarious liability question with the information the parties had provided; the supplemental briefs represented the parties' opportunity to make their arguments on the issue so that the court could fully resolve JLW's motion for summary judgment.

Second, this court's March 30 opinion made it clear to the parties that the court was not prepared to rule on the dispositive motions without full and proper briefing:

As the D.C. Circuit has recognized, a fundamental premise of our adversarial system is that courts do not sit as "self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *In re Cheney*, 334 F.3d 1096, 1108 (D.C.Cir.2003) ( [quoting] *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983)). This court, like any court, relies on the adversarial system to present relevant and appropriate issues to ensure just and fair results in the cases before it.

Mem. Op (Mar. 30, 2004) at 14.[4]

Finally, the fact that JLW had the good fortune of failing to file a "response" rather than an "opposition" should not compromise the court's inherent discretion to manage its docket, either as an extension of Local Rule 7(b) or as an exercise of the court's inherent power to "protect [its] integrity and prevent abuses of the judicial process." *Shepherd v. Am. Broad. Companies, Inc.*, 62 F.3d 1469, 1474–75 (D.C.Cir.1995) (noting the potency of inherent powers and the need for courts to exercise them with restraint). As the court stated in its March 30 opinion, the court was allowing the parties to "*rebrief* the question of the inherent-danger and peculiar-risk doctrines." Mem. Op (Mar. 30, 2004) at 13 (emphasis added). Thus, the court intended—and the parties should have been aware—that the supplemental submissions would have an almost equal role to (or, indeed, be extensions of) the original motion, opposition, and reply. In that sense, the court's need "to maintain docket control and to decide motions for summary judgment efficiently and effectively" is just as much at issue in dealing with the parties' supplemental submissions as it was in dealing with the parties' original chain of briefing. *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C.Cir.1996).

Accordingly, because JLW failed to submit a supplemental memorandum responding to the plaintiff's arguments, the court treats the plaintiff's supplemental memorandum as conceded and holds that JLW may be found vicariously liable for the acts of ICC. *See* LCvR 7(b); *Fox*, 389 F.3d at 1294; *Jackson*, 101 F.3d at 150; *see also Geller v. Randi*, 40 F.3d 1300, 1304 (D.C.Cir.1995) (holding that, because a failure to respond represents concession of an argument, the court will not review the merits of the conceded argument).

## IV. CONCLUSION

For the foregoing reasons, the court denies ICC's motion for partial summary judgment without prejudice. The court denies JLW's motions for leave to late file and holds that, by virtue of its late filings, JLW concedes that it can be found vicariously liable for the acts of ICC.[5] Because

---

4. Subsequent to this court's March opinion, the Supreme Court vacated *In re Cheney*, 334 F.3d 1096, 1108 (D.C.Cir.2003). *Cheney v. U.S. Dist. Court for Dist. of Columbia*, —— U.S. ——, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004). The Supreme Court's decision in *Cheney* has no impact on the proposition for which this court cited *In re Cheney*.

5. Ordinarily, the court would deem JLW's failure to oppose ICC's motion for summary judgment as a concession of that motion. LCvR 7(b); *Fox*, 389 F.3d at 1294. However, because the court has already addressed and rejected the legal merits of ICC's motion, the court in its discretion does not hold that JLW has conceded that motion.

the court denies JLW's motions for leave to late file, the court dismisses as moot the plaintiff's motion to strike JLW's proposed late filings. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 13th day of January, 2005.