Bernard DUREN, Respondent,

v.

Ohmer KUNKEL, Jr., Appellant.

No. 73326.

Supreme Court of Missouri,
En Banc.

Sept. 10, 1991.

R. Max Humphreys, Jefferson City, for appellant.

James J. Wheeler, Keytesville, for respondent.

HOLSTEIN, Judge.

Defendant Ohmer Kunkel, Jr., appeals from a judgment awarding plaintiff Bernard Duren $100,000 for personal injuries sustained when Duren was attacked by a bull owned by Kunkel. Following opinion by the Missouri Court of Appeals, Western District, transfer was granted to this Court. Rule 83.03. Reversed and remanded.

The single issue raised by the appellant is whether plaintiff made a submissible case. Kunkel contends the trial court should have sustained his motions for directed verdict and judgment notwithstanding the verdict because the evidence was insufficient to prove the bull in question had a dangerous propensity. In response, plaintiff asserts that a submissible case was made showing the bull's vicious propensity or, if a case was not made on that theory, plaintiff should have been permitted to submit on a theory of defendant's negligent failure to provide sufficient manpower in handling the bull. An instruction was tendered and refused on the latter theory. In reviewing a ruling on motions for directed verdict and judgment notwithstanding the verdict, the evidence is taken in a light most favorable to the verdict. The prevailing party is entitled to the benefit of all reasonable inferences favorable to the verdict, and evidence unfavorable to the verdict is disregarded. *Stark v. American Bakeries Co.*, 647 S.W.2d 119, 121 (Mo. banc 1983). The recital of the facts is made with these standards in mind.

In May of 1986, Kunkel bought a limousin bull at a sale. The bull was mature, weighing about 1800 pounds. Kunkel told Duren that he got the bull "a little cheaper" because the bull "acted up" in the sale ring.[1] The exact nature of the bull's conduct was not disclosed, but Duren understood "acting up" to mean trying to climb a fence, snorting and pawing. Kunkel had the bull delivered to his farm. After the bull arrived at the farm, Kunkel kept it in a separate pen for two or three days until it "settled down."

On June 27, 1987, Duren was at Kunkel's farm assisting in separating cattle in preparation for castrating and immunizing calves. Duren and Kunkel owned neighboring farms. They had often exchanged work of that kind. The calves were separated from the cows and the limousin bull was left with the calves in a corral. Kunkel wanted the bull moved because of his concern that the bull would "get together"

with a longhorn bull that was just "over the fence" from the corral where the limousin bull was located. Kunkel directed Duren to move the bull out of the corral. To do so required that the bull be moved past and very near where the calves had been castrated. The castration of between fifteen to twenty calves had left a quantity of blood on the ground. Duren proceeded as directed.

Acting alone, Duren drove the bull to a point about six feet from where the blood was on the ground. At that point, the bull turned and attacked Duren. Duren was knocked unconscious and sustained substantial and permanent injuries.

Expert testimony was presented as to the general character of bulls and limousin bulls in particular. Plaintiff's primary expert witness was Dr. J.W. Smith, a veterinarian with over forty-six years experience in a large animal practice. He had contact with herds all over the area on a daily basis. According to him, limousin bulls are the most aggressive of all beef breeds. Dr. Smith testified that all bulls are dangerous, but limousins tend to be more aggressive and active than other breeds. He stated that most bulls react aggressively in the presence of blood and it would be especially dangerous for one man to attempt to move a bull alone. The safe method, according to Dr. Smith, would require that there be more than one man or a few cows with the bull. In addition, an experienced cattle farmer testified that the smell of blood excites bulls, and driving a bull near fresh blood causes a bull to be more excitable and dangerous.

On the above evidence, the jury found Kunkel and Duren to each be fifty percent at fault. Duren's damages were assessed at $200,000. A judgment of $100,000 was entered for the plaintiff. The question now is whether the evidence is sufficient to make this case submissible.

■ The law in Missouri has long been that one who harbors a domestic animal with dangerous propensities known to the owner may be held liable even without a

---

1. Kunkel claimed he did not make the statement. However, that claim must be discounted along with other testimony inconsistent with the verdict.

showing of negligence on the part of the owner. *Clinkenbeard v. Reinert,* 284 Mo. 569, 225 S.W. 667, 668 (banc 1920).[2] This rule has been applied to liability of the owners of cattle. *Alexander v. Crotchett,* 124 S.W.2d 534, 537 (Mo.App.1939); *Maisch v. Kansas City Stock Yards Co. of Maine,* 241 S.W.2d 487, 492 (Mo.App.1951). The Missouri rule, and that followed in most jurisdictions, is:

> A possessor of a domestic animal that he knows or has reason to know has dangerous propensities abnormal to its class is subject to liability for harm done by the animal to another, although he has exercised the utmost care to prevent it from doing harm.

*Restatement (Second) of Torts,* § 509(1) (1977). Rules imposing liability for harm caused by domestic animals find their origin in authority no less ancient than the Pentateuch.[3]

The rule requiring actual or constructive knowledge of an abnormal dangerous propensity of a domestic animal has been rigidly applied to defeat recovery. The majority of these cases involved a dog bite. For example, knowledge by the owner that a dog chased and snapped at children on bicycles and fought with other dogs was insufficient to establish a dangerous propensity. *Crimmins v. Mirly,* 675 S.W.2d 663 (Mo. App.1984). Evidence that a dog was seen barking and lunging from a chain when people would get where they could be seen was held insufficient. *Frazier v. Stone,* 515 S.W.2d 766, 768 (Mo.App.1974). The owner's statement that the dog had once previously snapped at a person and that the dog was being trained as a watchdog and the owner did not want the dog to be friendly was insufficient evidence to establish actual or constructive knowledge of a vicious propensity. *Gardner v. Anderson,* 417 S.W.2d 130 (Mo.App.1967). Evidence of a prior attack on a person by a dog was held insufficient to establish knowledge of a dangerous propensity. *Boyer v. Callahan,* 406 S.W.2d 805, 806 (Mo.App.1966). "[T]he bare fact of a prior bite does not of itself establish the vicious propensity. The circumstances surrounding the occasion of the biting and its extent demonstrate whether the incident of the prior bite is sufficient evidence of a vicious propensity of the dog to inflict injury." *Boyer,* 406 S.W.2d at 810, quoting *Maxwell v. Fraze,* 344 S.W.2d 262, 264–65 (Mo.App.1961).

The rationale for requiring somewhat stringent proof of the owner's actual or constructive knowledge of a domestic animal's vicious propensity is primarily one of public policy. If actual or constructive knowledge is shown, the rule is one of strict liability, not requiring fault by the owner. *Prosser and Keeton on Torts,* 5th Ed. (1984) § 76. In the case of dogs, they have "earned and merited acceptance as man's best friend." *State ex rel. Kroger Co. v. Craig,* 329 S.W.2d 804, 808 (Mo.App. 1959).[4] The dog's social utility justifies permitting the owner a degree of freedom from potential liability. Other domestic animals, though naturally somewhat dangerous, also have utility to human beings:

> Bulls are more dangerous than cows and steers; stallions are more dangerous than mares or geldings; rams are more dangerous than ewes and lambs. However, these animals have been kept for stud purposes from time immemorial so that the particular danger involved in

---

**2.** The present case was submitted on an instruction that required a finding of both a dangerous propensity on the part of the bull and a finding of negligence on the part of defendant. The requirement of defendant's negligence is surplusage if a submissible case was made showing the bull had a known abnormal dangerous propensity.

**3.** "And if an ox gores a man or a woman to death, the ox shall surely be stoned and its flesh shall not be eaten; but the owner of the ox shall go unpunished. If, however, an ox was previously in the habit of goring, and its owner has been warned, yet he does not confine it, and it kills a man or a woman, the ox shall be stoned and its owner also shall be put to death." *Exodus* 21:28–29 (New American Standard Translation).

**4.** For the literary minded, the *Craig* case contains Judge Stone's history of mankind's long-standing relationship with the dog.

their dangerous tendencies has become a normal incident of civilized life ... [T]he virility which makes them dangerous is necessary for their usefulness in performing their function in the socially essential breeding of livestock, [and] justifies the risk involved in their keeping. Therefore the law has not regarded bulls, stallions and rams as being abnormally dangerous animals to be kept under the strict liability stated in this section.

*Restatement (Second) of Torts,* § 509, Comment e (1977).

■ Applying the above principles, here the evidence demonstrated that the bull "acted up" at a sale over a year prior to the accident, that it needed a few days to "settle down" after arriving at the Kunkel farm, and that Kunkel was concerned the bull might breach a fence on the date of the plaintiff's injury. In addition, the evidence demonstrates that limousin bulls are naturally disposed to be aggressive, particularly when exposed to the smell of blood. Even giving plaintiff the benefit of every reasonable inference, the evidence falls short of establishing that Kunkel knew or should have known that the bull in question had a vicious propensity different from other bulls of its breed or class. Thus, a case for strict liability was not established.

■ Plaintiff's brief on appeal raises a distinct question. That question is whether plaintiff should have been permitted to submit a claim based on a theory of ordinary negligence due to defendant's failure to provide sufficient personnel to drive the bull from the corral. The evidence, viewed favorably to plaintiff, was sufficient to establish that if one person drove a mature limousin bull past a point where fresh blood was standing on the ground, there

was a substantial risk of injury to the person driving the bull. As testified to by the veterinarian, one person could not safely perform that task alone. The farmer who testified as to the danger in driving a bull past the blood and to the natural aggressive propensity of bulls confirmed that the bull's attack was foreseeable by one with ordinary knowledge of cattle.

■ Defendant's position is that the owner of a domestic animal is immune from liability in the absence of actual or constructive knowledge of the animal's abnormally vicious propensities, even though the owner was in some respect negligent. That is not the law. In *Alexander v. Crotchett,* the most recent Missouri case involving injuries inflicted by a bull, the court of appeals first rejected the claim of strict liability. However, it went on to say, "Plaintiff claims that he was an invitee of defendant's on the latter's premises. We think that is correct and that defendant's liability is measured by its duty to an invitee." 124 S.W.2d at 537.[5] The duty owed to invitees includes the duty to eliminate or warn of dangerous conditions of which the defendant knows or in the exercise of reasonable care should have known. *Cox v. J.C. Penney Co., Inc.,* 741 S.W.2d 28, 29 (Mo. banc 1987). Similarly, an employer is under a duty to use ordinary care to see that the workplace is safe for employees. That includes a duty to provide the instrumentalities and sufficient men to do the work with reasonable safety to all those engaged in the work. *Todd v. Watson,* 501 S.W.2d 48, 50–51 (Mo.1973). The cases are consistent with the general law on the subject:

Except for animal trespass, one who possesses or harbors a domestic animal that he does not know or have reason to

---

**5.** See also *Swain by Swain v. Simon,* 699 S.W.2d 769 (Mo.App.1985). There the court of appeals found insufficient evidence of a dog's dangerous propensities. The court also considered whether there was sufficient evidence to submit on a theory of a breach of duty by defendant to exercise ordinary care to supervise a young child. While the court found the evidence of

ordinary negligence insufficient, it acknowledged the possibility of submitting on the latter theory without evidence of an abnormal dangerous propensity, referring to the "comprehended danger that would ordinarily be perceived when a small child and a dog, dangerous or not, are within close proximity." 699 S.W.2d at 774.

know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if ... he is negligent in failing to prevent the harm.

*Restatement (Second) of Torts*, § 518. Clearly, one who owns or possesses a bull may be found to have actual or constructive knowledge of the animal's normally dangerous propensities and be required to take reasonable steps to prevent foreseeable harm to invitees and employees. Viewed in the light most favorable to plaintiff, a submissible case of negligence is shown.

■ Defendant argues that there is no duty owed to warn plaintiff of that which he already knows or should know. Whether plaintiff knew of the danger or by using ordinary care could have known of the danger is an issue that, under comparative fault, does not defeat plaintiff's claim, but leaves the assessment of fault to the jury. *Cox v. J.C. Penney Co., Inc.*, 741 S.W.2d at 30.

Accordingly, the judgment is reversed and the cause is remanded for a new trial on the issue of negligence based on defendant's duty to plaintiff as an invitee or employee.

ROBERTSON, C.J., RENDLEN, COVINGTON and BLACKMAR, JJ., and HIGGINS and HOUSER, Senior Judges, concur.

BENTON, J., not participating because not a member of the Court when case was submitted.