**Craig GARRETT, Plaintiff–Respondent,**

v.

**OVERLAND GARAGE & PARTS, INC., Defendant–Appellant.**

No. 64080.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 14, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 28, 1994.

Application to Transfer Denied
Sept. 20. 1994.

James C. Leritz, Leritz, Plunkert & Bruning, P.C., St. Louis, for appellant.

Preston E. Roskin, Kenneth A. Leeds, Sharon Rhody, Roskin & Leeds, Clayton, for respondent.

PUDLOWSKI, Judge.

Appellant Overland Garage and Parts, Inc. appeals the jury verdict in favor of respondent Craig Garrett for injuries sustained due to a dangerous condition on appellant's premises. Appellant contends that the trial court erred: 1) By overruling appellant's two motions for a directed verdict because respondent did not present sufficient evidence; 2) by submitting the verdict director to the jury because it was not supported by sufficient evidence and it allowed respondent to recover on a theory not recognized by law; 3) by allowing respondent to introduce life expectancy evidence because there was no evidence respondent's injuries were permanent and no evidence of respondent's age and; 4) by failing to modify the judgment by the amount of respondent's Workers' Compensation award, pursuant to the Missouri Insurance Guaranty Act. This court finds no error with respect to points one, two and three. We agree with appellant that the verdict must be reduced by the amount of the Workers' Compensation award. The judgment is affirmed as modified.

In reviewing a ruling on motions for directed verdict and judgment not withstanding the verdict, the evidence is viewed in the light most favorable to the verdict.

*Duren v. Kunkel,* 814 S.W.2d 935, 936 (Mo. banc 1991). The prevailing party is entitled to the benefit of all reasonable inferences favorable to the verdict, and any evidence unfavorable to the verdict is disregarded. *Id.* In determining whether the evidence was sufficient to support a jury instruction, the evidence is viewed in the light most favorable to the offering party, and we give the offering party the benefit of all favorable inferences. *Kilgore v. Linville,* 733 S.W.2d 62, 63 (Mo.App.E.D.1987). We recite the facts with these standards in mind.

On the morning of August 17, 1990, Craig Garrett (respondent), an employee of the Old Vienna Potato Chip Company, went to Overland Garage & Parts Inc. to retrieve a company truck. Upon arrival, respondent was escorted by appellant's employee to the back of the garage where the truck was located. Respondent and the employee were walking along side another truck parked in the garage when appellant's eighty pound Doberman pinscher jumped out from behind the truck, growling and showing his teeth. The dog was chained at the time but respondent had not been warned of the dog's presence and was not aware of the restraint. Respondent was startled by the animal. He turned and ran. He slipped on some grease and oil. When he landed on the floor, an unidentified object fell on top of him. He injured his knee, elbow and back.

Respondent was taken to the hospital and released after x-rays and examination. He received additional medical treatment for his injuries after the accident and was released from the doctor with no permanent disability. At the time of trial, respondent was still experiencing back pain.

The dog was kept at the garage to guard the premises. At night, he was put outside in a fenced area at the rear of the garage to guard the vehicles awaiting repair. Appellant testified that "when you see a Doberman you are automatically careful." An employee of the garage testified that "the dog was kept in the fenced area to send a message to the general public, beware, don't come into this area." The garage had a policy of not allow-

ing customers into the area of the garage where the injury took place.

At the time of the accident, appellant was covered by an insurance policy for premises liability, but the insurer became insolvent before trial. Appellant's insurer was a member insurer of the Missouri Insurance Guaranty Fund (MIGA).

Respondent received Worker's Compensation benefits totalling $6,586.89 for the injuries sustained in the accident.

The case was tried by a jury. Appellant moved for a directed verdict at the close of respondent's evidence and again at the close of all the evidence. Both motions were denied. The jury returned a verdict for respondent for $14,850.00. Appellant filed a motion to modify the judgment by the amount of respondent's Workers' Compensation benefits, pursuant to § 375.772.2(2). That motion was denied. Appellant also made a motion for J.N.O.V. or for a new trial. Both motions were again denied. This appeal followed.

 In appellant's first point it argues that the trial court erred by refusing to grant its motions for directed verdict and J.N.O.V. because respondent did not present substantial evidence to support a finding that respondent's injury was foreseeable. We find no error. A case should not be submitted to the jury unless each and every fact essential to liability is shown by substantial evidence. *Hendricks v. Missouri–Kansas–Texas Railroad Company*, 709 S.W.2d 483, 487 (Mo. App.S.D.1986). Substantial evidence is competent evidence which, if true, has probative force upon the issues and evidence from which the trier of facts can reasonably decide the case. *Sheridan v. Sunset Pools of St. Louis, Inc.*, 750 S.W.2d 639, 641 (Mo.App. E.D.1988). Liability cannot rest upon guesswork, conjecture, or speculation *beyond* inferences that can reasonably be drawn from the evidence. *Id.* (emphasis added).

 The Missouri Supreme Court recognized that where a plaintiff is an invitee on defendant's property and is injured by an animal, the defendant's liability is measured by the duty owed to an invitee. *Duren*, 814 S.W.2d at 937. The duty owed to an invitee includes the duty to eliminate or warn of dangerous conditions, which the defendant knows about or in the exercise of reasonable care should have known about. *Id.* The evidence in this case was sufficient to submit the issue to the jury on whether appellant should have foreseen the dangerous condition. Appellant chained the dog out of view and hidden behind a truck parked in the garage. The garage owner testified that "when you *see* a Doberman, you are automatically careful." (emphasis added). An employee of the garage testified that "the dog was kept in the fenced area to send a message to the general public, beware, don't come into this area." There was also testimony that the garage had a policy of not allowing people into the back area of the garage, yet appellant's employee escorted respondent to the rear without warning him about the animal. This evidence was sufficient to submit the issue to the jury on whether appellant should have known that his concealed eighty pound dog represented a dangerous condition to an unwary invitee. Appellant's first point is denied.

 Appellant's second point raises an issue about the form of the verdict director. Because it did not make this same objection at trial or in its motion for new trial, appellant has preserved nothing for appeal. *Callahan v. Cardinal Glennon Hospital*, 863 S.W.2d 852, 858 (Mo. banc 1993). This court will not find that the trial court erred when an argument was not timely presented.

 Appellant did object at trial to the verdict director on three other grounds. The verdict director instructed the jury that the verdict must be for plaintiff if they believed in part that there was a dog in the rear of appellant's garage that had a tendency to startle visitors. Appellant contends that Missouri law requires a showing that a domestic animal had injured someone in the past before liability can be imposed on the owner and in the alternative, appellant argues that if the law does not require proof of past injury, there must be a showing that the animal startled someone in the past. Appellant then alleges that because it did not have actual or constructive knowledge of the ani-

mal's tendency to startle or injure, respondent was allowed to recover on a theory not recognized by law. We address all of these arguments simultaneously. Missouri recognizes two theories of recovery where a domestic animal causes injury to a person. One imposes strict liability and the other requires a showing of negligence. For strict liability to be imposed on a dog owner, it must be shown that the owner had actual or constructive knowledge of an animal's tendency to injure. *Duren*, 814 S.W.2d at 938. The owner is then held liable for the injury without a showing of negligence. *Id.* An owner is also subject to liability for harm done by an animal if the animal presents a dangerous condition on the owner's premises and the owner knew, or *should have known*, of the danger. *Id.* The latter is the theory on which respondent's case was submitted. In a premises liability case, where a dog is the dangerous condition, the law does not require a showing that an animal has injured or startled in the past. A dog's past behavior can be introduced to show that the appellant knew that the animal presented a danger to an invitee but past behavior is not necessary to show that appellant should have known that the manner in which he handled his animal presented a danger to an invitee. In this case, the issue is whether an eighty pound Doberman, hidden from view, presented a danger to an unwary invitee and whether appellant should have perceived the danger and at least warned of it. As discussed in point one, there was evidence from which the jury could make this determination. Therefore, the instruction was proper. Appellant's second point is denied.

■■■■ Appellant's third point on appeal alleges error by the trial court in admitting life expectancy evidence because there was no evidence of permanent injury. The trial court allowed respondent to state that the life expectancy of a thirty one year old male is thirty seven years. Respondent then argued for lifelong damages in his closing argument. We agree with appellant that a showing of permanent injury is necessary to allow life expectancy evidence but we find no reversible error. In order to warrant a new trial, an error in admitting evidence must materially affect the merits. *Porter v. Bi-*

*State Development Agency*, 710 S.W.2d 435, 436 (Mo.App.E.D.1986). Appellant alleges that the life expectancy evidence prejudiced its case and worked a substantial injustice on it but does not explain how the evidence affected the outcome. Appellant does not argue that the evidence resulted in an excessive verdict. We find the error was harmless. Appellant's third point is denied.

In appellant's final point it argues that the judgment should be reduced by the subrogation amount due the Workers' Compensation carrier (compensation carrier) because MIGA prevents recovery from an insured tortfeasor of an insolvent insurer for any amount due a compensation carrier as subrogation under § 287.150 RSMo 1986. We agree.

■■■■ Section 375.772.2(2) RSMo Cum. Supp. (1993) has yet to be interpreted under the facts of this case. We employ the well established rules of statutory construction in giving effect to this section. First, "intent and meaning of a statute can be ascertained from the general purpose of the enactment and by identifying the problem sought to be remedied." *Sermchief v. Gonzales* 660 S.W.2d 683, 688 (Mo. banc 1983). "The primary purpose of the various guaranty funds is to protect the insured and the public from the effects of insolvent insurers." *Qualls v. Missouri Insurance Guaranty Association*, 714 S.W.2d 732, 735 (Mo.App.E.D.1986). Therefore, § 375.772.2(2) is to be interpreted with a view toward protection of the insured and the public. Second, "the intent of the legislature is to be determined from the language used and the words are to be considered in their plain and ordinary meaning." *Springfield Park Central Hospital v. Director of Revenue* 643 S.W.2d 599 (Mo.1983). Section 375.772.2(2), states that "a covered claim shall *not* include any amount due ... any insurer ... as subrogation recoveries or otherwise, and to the extent of any amount due ... any insurer as subrogation recoveries or otherwise there shall be no recovery by any person against a tortfeasor insured of an insolvent insurer." (emphasis added). The plain meaning of the statute is as follows. First, when a tortfeasor's insurer is insolvent, any insurer who has paid a claim

that would ordinarily entitle it to subrogation will not be reimbursed by MIGA and second, no one may recover the subrogation amount from the tortfeasor of the insolvent insurer. Applying this interpretation to the case at bar, we find that the judgment must be deemed satisfied for the amount due the compensation carrier by right of subrogation because it is not a covered claim under MIGA and the statute precludes recovery of the subrogation amount from the tortfeasor. Therefore, the judgment is modified by the $6,586.89 respondent received from the Workers' Compensation carrier.

Respondent complains that the verdict should not be reduced because he will be subject to a claim by the compensation carrier and argues that appellant should have joined the carrier if it wanted the judgment reduced. We disagree with both contentions.

In order to fully address respondent's argument we must construe the Workers' Compensation statute in compliance with MIGA. "In construing two statutes concomitantly, where one deals with a subject in general terms and another deals with the same subject in a more minute way, the two are to be harmonized, if possible." *Fort Zumwalt School Dist. v. Diekerber,* 576 S.W.2d 532, 537 (Mo. banc 1979). Section 287.150 gives a compensation carrier a general right to subrogation where an injured party "recovers" the amount of the compensation claim from a third party. Section 375.772.2(2) deals with subrogation in the more minute circumstance of an insolvent insurer and provides that a party may not recover any amount due as subrogation from MIGA or from the tortfeasor of the insolvent insurer. We find, in reading these statutes harmoniously, that the general right of subrogation in § 287.150 is limited to cases where the insurer is solvent. In the case of an insolvent insurer, the injured worker cannot recover the amount that would be the subject of a subrogation claim. Therefore, the compensation carrier has no cause of action against the injured worker because there is no recovery of the Workers' Compensation award as a matter of law. After the judgment is modified by the Workers' Compensation award, any remaining balance does not represent a recovery of the sum paid out by the compensation carrier. That amount is unrecoverable.

We believe that a contrary interpretation of these two statutes would frustrate the intent of the legislature in enacting MIGA. Its purpose is to minimize the effects of insolvent insurers on innocent insureds and the public. As a means of protection, the legislature determined that the right to subrogation is lost when a tortfeasor's insurer is insolvent. Our construction of the statutes comports with this legislative intent. As to respondent's contention that appellant should have joined the compensation insurer if it wanted a reduction in the judgment, we find as previously discussed above, the compensation carrier has no right of recovery and respondent's argument has no merit. The jury verdict is affirmed as modified in conformity with this opinion.

SIMON, P.J., and CRANDALL, J., concur.