Katie B. WILSON, by her next friend, Terri A. WILSON, and Daniel E. Wilson and Terri A. Wilson, Appellants,

v.

Mark R. SIMMONS and Teresa L. Simmons, Respondents.

No. WD 60571.

Missouri Court of Appeals, Western District.

Feb. 18, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 1, 2003.

Application for Transfer Denied May 27, 2003.

H. Kent Desselle, Independence, MO, for appellants.

John E. Franke and Nikki Cannezzaro, Kansas City, MO, for respondents.

Before: ULRICH, P.J., and SPINDEN and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Terri A. Wilson, in her individual capacity and as next friend for her minor daughter, Katie B. Wilson, and Daniel E. Wilson, Terri's husband and Katie's father, appeal from the trial court's summary judgment for the respondents, Mark R. Simmons and Teresa L. Simmons, on the appellants' claims arising out of Katie's being bitten by the respondents' dog. In their two-count petition, the appellants sought damages for personal injuries, reimbursement of medical expenses, and for loss of services.

In their sole point on appeal, the appellants claim that the trial court erred in

granting summary judgment to the respondents on the appellants' claims on the basis that, after a reasonable period of time for discovery, they could not prove, under any theory pled, an essential element of their claims, that the respondents knew or should have known that their dog had vicious propensities, because there was a genuine dispute as to that material fact.

We reverse and remand.

## Facts

The parties were neighbors. On July 11, 1994, nine-year-old Katie was playing with the respondents' daughter, Tiffany Simmons, at the respondents' home, when she was bitten by Bo, the respondents' dalmation dog. Katie was petting the dog just before it bit her. As a result of being bitten, Katie suffered several puncture wounds to her throat, which damaged her trachea. As a result, she was taken by ambulance to Children's Mercy Hospital in Kansas City, Missouri, where she underwent emergency surgery to repair her trachea, followed by a stay in the hospital's intensive care unit. Katie remained in the hospital a total of three days.

On November 12, 1998, the appellants filed suit against the respondents in the associate division of the Circuit Court of Jackson County. In Count I of the petition, Katie, through her mother as next friend, sought recovery for her injuries, and in Count II, Katie's parents sought damages for reimbursement of medical expenses and the loss of Katie's services. The appellants' claims were pled under three alternative theories of recovery: strict liability, premises liability, and negligence. On January 18, 2001, the appellants filed a request for a jury trial. The case was then transferred on February 22, 2001, to a circuit division, Division 2 of the Circuit Court of Jackson County.

On July 20, 2001, the respondents filed a motion for summary judgment alleging that the appellants had not produced and would not be able to produce sufficient evidence to establish the requisite proof elements of their claims, under any of the three theories pled, specifically that the respondents' dog possessed vicious propensities that were known by or should have been known to them prior to the incident. In support of their motion, they attached their affidavits, which averred, *inter alia,* that prior to the date of their dog biting Katie, neither of them had ever seen or known of their dog biting, nipping, or otherwise harming anyone, including their own daughter, Tiffany. On September 17, 2001, the appellants filed their response to the respondents' motion, accompanied by the affidavits of Mrs. Wilson and Katie. According to Mrs. Wilson's affidavit, immediately following the dog bite, Mrs. Simmons exclaimed that "the dog had bit and nipped at her own daughter [Tiffany] on several occasions." Similarly, Katie stated in her affidavit that Tiffany had told her that "sometimes the dog bit at her when it was feeding."

The respondents' motion was heard by the trial court on September 26, 2001, and sustained on September 27, 2001. In entering summary judgment for the respondents, the trial court found that "a plaintiff seeking to recover damages from a dog bite must prove that the dog owner knew or at least had reason to know of his pet's tendency to bite people, or its 'dangerous propensities.'" The trial court further found that this requirement existed "[r]egardless of the theory upon which the claim is based."

This appeal followed.

## Standard of Review

Our standard of review is set forth in *ITT Commercial Fin. Corp. v. Mid–Am.*

*Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. *banc* 1993), which states, in relevant part:

> When considering appeals from summary judgments, the [c]ourt will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.
>
> Our review is essentially *de novo.* The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

(Citations omitted.)

### I.

In their sole point on appeal, the appellants claim that the trial court erred in granting summary judgment to the respondents on the appellants' claims on the basis that, after a reasonable period of time for discovery, they could not prove, under any theory pled, an essential element of their claims, that the respondents knew or should have known that their dog had vicious propensities, because there was a genuine dispute as to that material fact. Specifically, they claim that they had put the issue of the respondents' dog's

vicious propensities in dispute sufficiently to defeat the respondents' motion for summary judgment, in that in Mrs. Wilson's affidavit, she stated that, immediately following the dog bite, Mrs. Simmons exclaimed that the dog had bit and nipped at her own daughter on several occasions and that in Katie's affidavit she stated that the respondents' daughter had told her that sometimes the dog bit at her when it was feeding.

 To make a *prima facie* case for summary judgment under Rule 74.04,[1] the movant must show that: (1) there is no genuine dispute as to the material facts on which the movant is relying for summary judgment; and (2) based on those undisputed facts, the movant is entitled to judgment as a *matter* of law. Rule 74.04; *ITT Commercial Fin.,* 854 S.W.2d at 380. If the movant is a defending party, as in our case, a *prima facie* case for summary judgment can be made by employing one or more of three means: (1) showing undisputed facts that negate any one of the plaintiff's required proof elements; (2) showing that the plaintiff, after an adequate period of discovery, has not produced and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of one or more of the plaintiff's proof elements; or (3) showing that there is no genuine dispute as to the existence of the facts necessary to prove the movant's properly pleaded affirmative defense. *ITT Commercial Fin.,* 854 S.W.2d at 381. "Regardless of which of these three means is employed by the 'defending party,' each establishes a right to judgment as a matter of law." *Id.* "Where the facts underlying this right to judgment are beyond dispute, summary judgment is proper." *Id.*

---

**1.** All rule references are to the Missouri Rules of Civil Procedure (2002), unless otherwise indicated.

The appellants' claims were pled on three alternative theories of recovery: (1) strict liability; (2) premises liability; and (3) negligence. Thus, as a defending party, to make a *prima facie* case for summary judgment, the respondents were required to demonstrate in their motion, employing one or more of the three means discussed in *ITT*, that on the undisputed material facts alleged, the appellants could not, as a matter of law, recover on any of the three theories pled. *Ashworth v. City of Moberly*, 53 S.W.3d 564, 571 (Mo.App. 2001). In their motion, the respondents employed the second means available to a defending party for obtaining summary judgment. They contended, as the sole basis for their motion, that regardless of the theory pled, they were immune from liability for their dog's attack on Katie, unless the appellants could prove that, at that time, the respondents' dog possessed vicious propensities, of which the respondents had actual or constructive knowledge, and that the appellants had not and would not be able to produce any evidence establishing that fact. In that regard, the respondents argued below that even assuming that their dog had bitten or had nipped at their daughter on a prior occasion or occasions, as asserted in the appellants' response to the respondents' motion for summary judgment, that fact was insufficient to put the issue of their dog's vicious propensities in genuine dispute so as to allow the appellants to survive summary judgment in that proof of a prior dog bite and/or attempts to bite is insufficient to establish the vicious propensities of a dog without evidence of the circumstances relating to the occasion of the biting and its extent.

■ In entering summary judgment for the respondents, there can be no doubt that the trial court agreed with the respondents' argument with respect to the appellants' being required to show that the respondents' dog possessed vicious propensities of which they had actual or constructive knowledge. In that regard, the judgment of the trial court reads: "Regardless of the theory upon which the claim is based, a plaintiff seeking to recover damages from a dog bite must prove that the dog owner knew or at least had reason to know of his pet's tendency to bite people, or its 'dangerous propensities.'" Although not expressly raised by the appellants in their brief, it is immediately obvious that in granting summary judgment to the respondents on that basis, the trial court erroneously declared and applied the law. While it is well settled that a dog's abnormally vicious propensities is a proof element of a dog bite case pled on a theory of strict liability, as we discuss below, it is not an element of a dog bite case pled on a theory of premises liability, one of the three theories pled by the appellants.

In *Duren v. Kunkel*, 814 S.W.2d 935 (Mo. *banc* 1991), the Missouri Supreme Court addressed the distinction between the required proof in a strict liability case and a premises liability case involving domestic animals, including dogs. In *Duren*, the plaintiff sought damages for personal injuries caused by a domestic bull. *Id.* at 935. The plaintiff's case was pled on the alternative theories of strict liability and premises liability. The plaintiff was found 50% at fault and found to have sustained $200,000 in damages. Accordingly, a judgment of $100,000 was entered for the plaintiff. On appeal, the defendant claimed that the trial court erred in not directing a verdict for him because the plaintiff had failed to make a submissible case in that the plaintiff, regardless of the theory pled, was required, but had failed, to prove that the defendant's bull had vicious propensities that were known or should have been known to the defendant. *Id.* at 936. In

addressing the defendant's claim, the Court discussed at length the law of strict-liability dog bite cases and the public policy behind it. That discussion is worthy of repeating:

The Missouri rule, and that followed in most jurisdictions, is:

A possessor of a domestic animal that he knows or has reason to know has dangerous propensities abnormal to its class is subject to liability for harm done by the animal to another, although he has exercised the utmost care to prevent it from doing harm.

*Restatement (Second) of Torts,* § 509(1) (1977). Rules imposing liability for harm caused by domestic animals find their origin in authority no less ancient than the Pentateuch.

The rule requiring actual or constructive knowledge of an abnormal dangerous propensity of a domestic animal has been rigidly applied to defeat recovery. The majority of these cases involved a dog bite. For example, knowledge by the owner that a dog chased and snapped at children on bicycles and fought with other dogs was insufficient to establish a dangerous propensity. Evidence that a dog was seen barking and lunging from a chain when people would get where they could be seen was held insufficient. The owner's statement that the dog had once previously snapped at a person and that the dog was being trained as a watchdog and the owner did not want the dog to be friendly was insufficient evidence to establish actual or constructive knowledge of a vicious propensity. Evidence of a prior attack on a person by a dog was held insufficient to establish knowledge of a dangerous propensity. [T]he bare fact of a prior bite does not of itself establish the vicious propensity. The circumstances surrounding the occasion of the biting and its extent demonstrate whether the incident of the prior bite is sufficient evidence of a vicious propensity of the dog to inflict injury.

The rationale for requiring somewhat stringent proof of the owner's actual or constructive knowledge of a domestic animal's vicious propensity is primarily one of public policy. If actual or constructive knowledge is shown, the rule is one of strict liability, not requiring fault by the owner. In the case of dogs, they have earned and merited acceptance as man's best friend. The dog's social utility justifies permitting the owner a degree of freedom from potential liability.

*Id.* at 937. (Internal quotations and citations omitted.) The Court, applying the foregoing "Missouri rule," held that the plaintiff failed to make a submissible case on a theory of strict liability in that the evidence was insufficient from which a reasonable jury could find that the defendant's bull had abnormally dangerous or vicious propensities. *Id.* at 938.

■ Having determined that the plaintiff had not made a submissible case on a theory of strict liability, the *Duren* Court then addressed whether he had made a submissible case on a theory of negligence. In that regard, the Court flatly rejected the defendant's position that the owner of a domestic animal is absolutely immune from liability, under any theory pled, unless the plaintiff can show that the animal possessed abnormally dangerous or vicious propensities that were known or should have been known by the defendant. *Id.* Rather, the Court recognized that a possessor of land is liable for injury caused by a domestic animal to an entrant on the land, either as an invitee or licensee, under a theory of premises liability if the entrant can show, *inter alia,* that the animal had "normally dangerous propensities" and the possessor of the land failed to take reason-

able steps to warn of or prevent the foreseeable harm posed by the animal's propensities. *Id.* at 938–39. Thus, *Duren* teaches us that with respect to the proof element of dangerous propensities in domestic animal cases, strict liability cases require proof of *abnormally* dangerous or vicious propensities, whereas premises liability cases only require proof of *normally* dangerous propensities. The distinction in proof of dangerous propensities between strict liability and premises liability cases is significant in that to show abnormally dangerous or vicious propensities, the plaintiff must not only show that the animal in question presents a foreseeable danger to humans, but that the danger posed results from dangerous propensities that are abnormal to the class of animals to which the animal in question belongs. *Id.*

The Missouri Rule, as announced in *Duren,* recognizes that in dog bite cases there exists a two-tier system of liability, predicated on the dog's dangerous propensities. As to a dog that possesses abnormally dangerous or vicious propensities, the rule makes it clear that regardless of what steps are taken to warn or protect from those dangers, of which the owner has actual or constructive knowledge, the owner will be strictly liable for any injuries caused by the dog. In other words, our public policy is that if an owner wants to knowingly maintain a vicious dog, he or she will be strictly liable for the injuries caused by the dog.

With respect to a dog that does not possess known vicious dangerous propensities, the rule reflects "a degree of freedom from potential liability" in recognition of the fact that dog is considered man's best friend. *Id.* at 937. However, the *Duren* Court makes it clear that that degree of freedom from liability is not absolute. Logically, just because a dog has great social utility does not mean that its possessor should get a free pass where its normally dangerous propensities present a foreseeable danger to certain classes of entrants on the land. Many conditions of land that present a foreseeable danger may have some utility to the possessor, but that fact has not been recognized as a basis for total immunity from liability. Rather, the law of premises liability balances the utility of maintaining such conditions against protecting the safety of certain entrants on the land. For instance, although a working well may have great utility to the land owner who maintains it, he or she is not cloaked with total immunity in this state from liability for a foreseeable danger created by that well. Thus, under the second tier of the Missouri Rule, the law has recognized that a possessor of land can be held liable to an invitee or licensee entering on the land for a foreseeable danger created by the normally dangerous propensities of a dog.

Of course, whether proceeding under strict liability or premises liability, our public policy with respect to domestic animals dictates that there be proof that the possessor of the animal, prior to the incident, had some knowledge of the animal's dangerous propensities. With respect to premises liability, the elements of proof, including proof of the owner's knowledge of the dangerous propensities of his or her dog, is dictated by the entrant's classification as either a trespasser, licensee, or invitee. *Carter v. Kinney,* 896 S.W.2d 926, 928 (Mo. *banc* 1995). An entrant is deemed a trespasser unless the possessor of the land has given the entrant permission to enter. *Id.* One who enters the premises of another with permission is a licensee, unless the possessor has a sufficient interest in the visit that it is reasonable to assume that the possessor has made the premises safe for the visit, in

which case the visitor is deemed· an invitee. *Id.* Generally, the possessor owes a trespasser no duty of care; a licensee the duty to make safe dangers known to the possessor; and an invitee the duty to exercise reasonable care to protect him or her against both known dangers and those that would be revealed by inspection. *Id.* (citations omitted). Thus, in a dog bite case pled on a premises liability theory, the possessor is subject to liability for harm to licensees if the dog presents a foreseeable danger to a licensee of which the possessor is aware; and a possessor is subject to liability for harm to an invitee if the dog presents a foreseeable danger to the invitee of which the possessor knows or should have known.

We are, of course, aware of the fact that we are to affirm the trial court's award of summary judgment on any basis supported by the summary judgment record made. *Victory Hills Ltd. P'ship I v. NationsBank, N.A.,* 28 S.W.3d 322, 327 (Mo.App.2000). In that regard, with respect to the appellants' claims based on a theory of premises liability, the respondents did not allege any facts in their motion, which if taken as undisputed, would demonstrate that Katie was a trespasser, to whom no duty of care was owed. In fact, the appellants' affidavits in response to the respondents' motion would suggest otherwise. Likewise, there was nothing in the respondents' motion to suggest that the appellants would not be able to show that the respondents' dog had normally dangerous propensities that constituted a foreseeable danger to a child such as Katie, requiring the respondents to use due care in allowing Katie to have contact with the dog, depending on the circumstances that existed at the time of the incident. In fact, the appellants' affidavits would suggest otherwise. As we discuss, *supra,* the respondents' sole basis for contending that they were entitled to summary judgment because the appellants could not make a case under any theory pled, including premises liability, was that the appellants were required to but could never prove that the respondents' dog possessed vicious propensities, which as we discuss, *supra,* was not a proof· element of the appellants' claims pled under a theory of premises liability. Thus, as a defending party, on the summary judgment record made in accordance with Rule 74.04, by which we are bound, the respondents failed to make a *prima facie* case for summary judgment in that they did not demonstrate that the appellants could not make a case on any theory pled. Hence, the trial court clearly erred in entering summary judgment for the respondents based on its erroneous declaration that the law required the appellants, in order to succeed on their claims on any theory pled, including premises liability, to prove that the respondents' dog possessed vicious propensities that were known or should have been known to them prior to the incident.

On appeal, the appellants do not challenge the trial court's grant of summary judgment to the respondents on the basis that the law did not require them to prove that the respondents' dog possessed vicious propensities in order to recover under a theory of premises liability. Rather, they claim that their response to the respondents' motion was sufficient to put the issue whether the respondents' dog possessed vicious propensities in legitimate dispute such that they should have survived summary judgment. Because they failed to brief the issue on which we find error, we can reverse only if we find plain error under Rule 84.13(c), which provides that "[p]lain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

In determining whether to exercise its discretion to provide plain error review, the appellate court looks to determine whether there facially appears substantial grounds for believing that the trial court committed error that is evident, obvious and clear, which resulted in manifest injustice or a miscarriage of justice. *Bedwell v. Bedwell*, 51 S.W.3d 39, 43 (Mo.App. 2001). If in applying this standard the appellate court chooses to exercise its discretion to conduct plain error review, the process involves two steps. First, the court must determine whether the trial court actually committed evident, obvious and clear error that affected substantial rights. *State v. Hibler*, 21 S.W.3d 87, 96 (Mo.App.2000). However, as in the case of regular appellate review, not every obvious, evident and clear error found in plain error review requires reversal. In the case of regular review, to be reversible, the error found must have prejudiced the appellant. *Coats v. Hickman*, 11 S.W.3d 798, 807 (Mo.App.1999). Likewise, in the case of plain error review, the error must have prejudiced the appellant, except that such prejudice must constitute manifest injustice or a miscarriage of justice. *Slankard v. Thomas*, 912 S.W.2d 619, 628 (Mo. App.1995). Thus, in the second step of reviewing for plain error, the court must determine whether the evident, obvious, and clear error found resulted in manifest injustice or a miscarriage of justice. Because we find substantial grounds exist for believing that manifest injustice and a miscarriage of justice resulted from the trial court's grant of summary judgment to the respondents, we choose to review for plain error.

As we discuss, *supra*, the trial court's grant of summary judgment was obvious, evident and clear error based on the law found in *Duren*, which was decided by our Supreme Court over a decade ago. The *Duren* Court left no doubt that proof of vicious propensities is not a proof element of every claim for recovery for an injury caused by a dog bite when the Court stated: "Defendant's position is that the owner of a domestic animal is immune from liability in the absence of actual or constructive knowledge of the animal's abnormally vicious propensities, even though the owner was in some respect negligent. *That is not the law.*" 814 S.W.2d at 938. (Emphasis added.) As to whether a substantial right of the appellants was affected by the erroneous ruling of the trial court, it is well settled that summary judgment, even when done in strict compliance with Rule 74.04, borders on a denial of due process in that it works to deprive an individual of his or her right to a day in court. *Bellon Wrecking & Salvage Co. v. Rohlfing*, 81 S.W.3d 703, 705 (Mo.App. 2002); *Boone County v. County Employees' Ret. Fund*, 26 S.W.3d 257, 260 (Mo. App.2000). Thus, where, as here, summary judgment was granted based on obvious, evident and clear error as to the controlling law, there can be no doubt as to a substantial right being affected. Thus, the only question remaining in determining whether to reverse for plain error is whether manifest injustice or a miscarriage of justice resulted from the trial court's error.

For there to be manifest injustice or a miscarriage of justice, the error in question must be decisive in the outcome of the proceeding. *Deck v. State*, 68 S.W.3d 418, 427 (Mo. banc 2002); *State v. Jimmerson*, 891 S.W.2d 470, 472 (Mo.App. 1994). Obviously the trial court's erroneous declaration of the law as to the required proof elements of a dog bite case based on premises liability was decisive, in that it was the sole basis for its granting the respondents' motion for summary judgment. As to whether an injustice or a miscarriage of justice resulted from the trial court's error, what greater injustice could there be than to allow the trial court

here to erroneously deny the appellants their due process right to have their claims heard by a jury of their peers, where on the summary judgment record before us it remains in genuine dispute whether they could make a submissible case on at least one theory pled?

For the reasons stated, we find that the trial court plainly erred in granting the respondents' motion for summary judgment, requiring us to reverse. Rule 84.13(c).

### Conclusion

The circuit court's summary judgment for the respondents on the appellants' claims for damages for personal injuries, reimbursement of medical expenses, and loss of services is reversed, and the cause is remanded to the court for further proceedings consistent with this opinion.

ULRICH, P.J., and SPINDEN, J., concur.