In the ESTATE OF Walter
PITTSENBARGER,
Deceased.

Norma Jean Pittsenbarger, Appellant,

v.

Sue Schmitz and Linda Wiley Pickering,
Co–Personal Representatives of the
Estate of Walter Pittsenbarger, De-
ceased, and Co–Successor Trustees of
the W.R.P. Trust Dated 11/25/92, Re-
spondents.

No. WD 62716.

Missouri Court of Appeals,
Western District.

June 22, 2004.

Creath S. Thorne, St. Joseph, MO, for Appellant.

John W. Baker, Jr., Maryville, MO, for Respondents.

Before LOWENSTEIN, P.J., and EDWIN H. SMITH and HOWARD, JJ.

EDWIN H. SMITH, Judge.

Norma Jean Pittsenbarger appeals from the judgment of the Circuit Court of Worth County, Probate Division, for the respondents, Sue Schmitz and Linda Pickering, finding that the "Agreement and the Waiver of Right to Elect" signed by the appellant on April 11, 2001, waiving her right of election to take against the will of her deceased husband, Walter Ray Pittsenbarger, § 474.160,[1] was valid and enforceable.

The appellant raises three points on appeal. In Points I and II, she claims that the probate court erred in finding that her waiver of election was valid and enforceable, because the evidence did not support the findings required by § 474.220 to ef-fectuate a valid waiver, that: (1) it was made after full disclosure of the nature and extent of her right of election; and (2) it was supported by fair consideration, in light of all the circumstances. In Point III, she claims that the probate court erred in finding that her waiver of election was valid and enforceable, because "in so holding [the] respondents were allowed to enforce an agreement which they breached and for which no consideration was ever paid."

We dismiss for a lack of jurisdiction.

## Facts

On November 25, 1992, the appellant's deceased husband executed his "Last Will and Testament," and established a revoca-ble *inter vivos* trust, "the W.R.P. Trust." In his will, Mr. Pittsenbarger "be-queath[ed] the remainder of [his] estate, real, personal and mixed of every kind and nature, whatsoever and wheresoever situ-ated to the W.R.P. TRUST DATED NO-VEMBER 25, 1992." In addition, he named his wife at the time, Melba Irene Pittsenbarger, as personal representative of the estate, with the respondents being named as successor co-personal represen-tatives. As to the W.R.P. Trust, Mr. Pitt-senbarger named his wife, Melba, and him-self as co-trustees, with the respondents being named as co-successor trustees. Under the terms of the trust, upon the death of Mr. Pittsenbarger and his wife, the respondents were to receive the then balance of the W.R.P. Trust.

Following the death of his wife, Melba, in 1996, Mr. Pittsenbarger began a rela-tionship with the appellant. On July 10, 1998, the two were married. Approxi-mately two and a half years later, on March 13, 2001, Mr. Pittsenbarger died,

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

having never revoked the November 25, 1992, will.

Shortly after Mr. Pittsenbarger's death, the respondents approached the appellant regarding a possible "settlement" of any claims she might have against their father's estate and/or the W.R.P. Trust. At some point, the appellant agreed to settle any and all claims that she might have. In that regard, the parties, on April 11, 2001, executed what was denominated "WAIVER OF RIGHT TO ELECT TO TAKE AGAINST WILL OR TRUST AND ASSIGNMENT OF ALL RIGHTS OF INHERITANCE FROM THE ESTATE OF WALTER RAY PITTSENBARGER, DECEASED AND THE WRP TRUST DATED, NOVEMBER 25, 1992," which was prepared by attorney, Jerold Drake. Pursuant to the agreement and waiver, the appellant, in return for her waiver, waiving "all right to take against the will of Walter Ray Pittsenbarger, deceased, or the WRP Trust," was to receive $50,000 in cash and a pick-up truck.

On June 19, 2001, Mr. Pittsenbarger's will was admitted to probate. The respondents were appointed co-personal representatives, in accordance with the will, so that the respondents, thereafter, were not only serving as co-trustees of the W.R.P. Trust, but also as co-personal representatives of his estate. On June 25, 2001, the appellant filed what she denominated: "WITHDRAWAL OF WAIVER OF RIGHT TO ELECT TO TAKE AGAINST WILL OR TRUST AND ASSIGNMENT OF ALL RIGHTS OF INHERITANCE FROM THE ESTATE OF WALTER RAY PITTSENBARGER, DECEASED AND THE WRP TRUST DATED NOVEMBER, 1992." Shortly thereafter, on August 3, 2001, she filed her "ELECTION OF SURVIVING SPOUSE TO TAKE AGAINST WILL." And, on November 6, 2001, she filed a "PETITION FOR RE-MOVAL OF PERSONAL REPRESENTATIVES," and a "PETITION TO SET ASIDE TRANSFER IN FRAUD OF MARITAL RIGHTS," which was amended on December 11, 2002.

On January 24, 2003, the respondents filed a motion for summary judgment as to the appellant's election to take against the will, and her petitions to remove the respondents as personal representatives of Mr. Pittsenbarger's estate and to set aside the alleged fraudulent transfer of marital assets to the W.R.P. Trust by him. On January 30, 2003, the respondents' motion was taken up and heard. On March 24, 2003, the probate court entered its judgment, entitled "JUDGMENT ON VALIDITY OF AGREEMENT AND WAIVER OF RIGHT TO ELECT," which provided, *inter alia:*

It is therefore ORDERED, ADJUDGED AND DECREED as follows:

1. Respondents' Motion For Summary Judgment be and is hereby overruled, as there were genuine issues of material fact to be decided.

2. The agreement and Waiver of Right to Elect, Petitioner's Exhibits # 1 and # 2, are valid and enforceable against Norma Jean Pittsenbarger.

3. On the issues presented (the validity of the Agreement and the Waiver of Right to Elect) this is a final judgment pursuant to Section 472.160.1(14) RSMo.

This appeal followed.

### Appellate Jurisdiction

█ As in every case, we must first determine whether we have jurisdiction to hear this appeal on the merits. *Sumnicht by Sumnicht v. Sackman,* 968 S.W.2d 171, 174 (Mo.App.1998). In that regard, this court lacks jurisdiction to consider an appeal from a void judgment, as such a judg-

ment is a nullity and of no legal effect. *City of Excelsior Springs v. Elms Redevelopment Corp.*, 18 S.W.3d 61, 65 (Mo.App. 2000). As we discuss, *infra*, the judgment of the probate court, declaring that the appellant's waiver of her right to elect was valid, was void, depriving us of jurisdiction to review on the merits.

The purported judgment from which the appellant appeals was entered on March 24, 2003, and was entitled: "JUDGMENT ON VALIDITY OF AGREEMENT AND WAIVER OF RIGHT TO ELECT." Therein, the probate court found that the waiver, signed by the appellant on April 11, 2001, was valid and enforceable, in accordance with § 474.220, which provides:

> The right of election of a surviving spouse hereinbefore given may be waived before or after marriage by a written contract, agreement or waiver signed by the party waiving the right of election, after full disclosure of the nature and extent of the right, if the thing or the promise given to the waiving party is a fair consideration under all the circumstances.

Specifically, the court found that the waiver was valid and enforceable because "[t]here was full disclosure to [the appellant], or knowledge equivalent to full disclosure[,]" and that the waiver was "based on fair consideration[.]" The probate court's judgment purports to be a judgment on the merits, after a trial before the court. However, the record raises the question as to whether a trial was actually had or whether there was simply a hearing on the respondents' motion for summary judgment, which motion was denied in the court's judgment.

The record reflects a docket entry of the probate court on September 6, 2002, stating, in pertinent part: "cause set for trial before the court on January 30 and 31, 2003, @ 9:00 a.m." Inasmuch as there was nothing in the probate court's docket entry further delineating "cause," we can assume that at the time of the docket entry, any matters then pending in Mr. Pittsenbarger's estate would be taken up and heard on the merits. At that point in time, pending before the court were appellant's: (1) "ELECTION OF SURVIVING SPOUSE TO TAKE AGAINST WILL"; (2) "PETITION TO SET ASIDE TRANSFER IN FRAUD OF MARITAL RIGHTS"; and (3) "Petition for Removal of Personal Representatives." In her petition to set aside the transfer to the trust, the appellant alleged that Mr. Pittsenbarger, during the course of their marriage, had transferred to the W.R.P. Trust real and personal property belonging to the marital estate, for the purpose of defeating her marital rights therein. And, in her petition to remove the respondents as personal representatives of their father's estate, the appellant alleged that, although requested, the respondents, as personal representatives of the decedent's estate and co-trustees of the W.R.P. Trust, had refused to act in restoring to the decedent's estate the property that had allegedly been fraudulently transferred by Mr. Pittsenbarger to the W.R.P. Trust.

In addition to filing her election to take against the will, and petitions to remove the personal representatives and set aside the alleged fraudulent transfer to the W.R.P. Trust, the appellant filed what she denominated: "WITHDRAWAL OF WAIVER OF RIGHT TO ELECT TO TAKE AGAINST WILL OR TRUST AND ASSIGNMENT OF ALL RIGHTS OF INHERITANCE FROM THE ESTATE OF WALTER RAY PITTSENBARGER, DECEASED AND THE WRP TRUST DATED NOVEMBER 25, 1992." Her "withdrawal" did not allege any authority or grounds for being allowed to unilaterally withdraw her waiver of elec-

tion. It simply was a statement of her "intent" to withdraw her waiver. Of course, her "withdrawal of waiver" was not a separate and distinct matter for resolution by the probate court, but was simply an issue that bore on the appellant's election to take against the will. In that regard, in filing her "withdrawal of waiver," the appellant was obviously anticipating that the respondents would assert her written waiver of election as a bar to her election to take against the will. As anticipated, the respondents filed, on December 7, 2001, what they denominated an: "OBJECTION TO ELECTION OF SURVIVING SPOUSE TO TAKE AGAINST WILL," alleging that the appellant's election was barred by her waiver of April 11, 2001. The respondents' objection, based on the appellant's waiver, would be considered an affirmative defense to the appellant's election to take against the will, *see* Rule 55.08, and was not a separate action.

On January 24, 2003, the record indicates that the respondents filed a motion for summary judgment on the appellant's election to take against the will, and petitions to remove the personal representatives and to set aside the alleged fraudulent transfer of marital assets. To be entitled to summary judgment, the movant must allege undisputed material facts entitling him to judgment as a matter of law. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. *banc* 1993); *Wilson ex rel. Wilson v. Simmons*, 103 S.W.3d 211, 215 (Mo.App. 2003). And, where, as here, the movant is a defending party, he may employ one or more of three means to show entitlement to summary judgment:

(1) showing undisputed facts that negate any one of the plaintiff's required proof elements; (2) showing that the plaintiff, after an adequate period of discovery, has not produced and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of one or more of the plaintiff's proof elements; or (3) showing that there is no genuine dispute as to the existence of the facts necessary to prove the movant's properly pleaded affirmative defense.

*Wilson ex rel. Wilson*, 103 S.W.3d at 215. Here, the respondents chose the third means, alleging facts, which when taken as true, would establish their affirmative defense of waiver, in accordance with § 474.220, barring the appellant's election to take against Mr. Pittsenbarger's will. With respect thereto, the appellant, in her response to the motion, alleged, *inter alia*, that the waiver was invalid in that it was not given after full disclosure of the nature and extent of her right to elect, as required by § 474.220.

The parties appeared before the probate court on January 30, 2003. Prior to any evidence being adduced, the following exchange occurred between the probate court and the attorneys for the parties, concerning what was being taken up by the court:

THE COURT: This morning the Court is taking up matters in the Estate of Walter Pittsenbarger, Deceased, Case No. CV1001–7P. The personal representatives of the estate, Sue Schmitz and Linda Wiley [Pickering], are present with their attorney, John Baker. The Movant, I suppose, would be Ms. Pittsenbarger—I suppose—

MR. THORNE: Yes.

THE COURT:—and her attorney, Creath Thorne, are present in person. And, as the Court understands it, I know there's a number of pending things in this estate. My understanding is what we're taking up today is the matters concerning the validity of

the spousal waiver in this case. Right, Mr. Baker? Mr. Thorne?

MR. THORNE: That's correct, Your Honor.

THE COURT: Okay. Actually, I'm taking—Let's see. Well, if I have this right, I guess in my mind Norma Jean Pittsenbarger has filed her withdrawal of her waiver of right to elect, so I assume she's got the burden of going forward. Mr. Thorne.

MR. THORNE: Well Your Honor, I— And I had discussed this with Mr. Baker, and I think, just in order to get the issue firmly before the Court, Mr. Baker had filed a motion for summary judgment.

THE COURT: True.

MR. THORNE: So we had talked about either a motion to dismiss or a motion for summary judgment, and I think Mr. Baker had chosen the latter. So I—And that was filed—I hope it's in the Court's file. I think it was filed just a couple of days ago—

THE COURT: Yes.

MR. THORNE:—and I prepared a response yesterday—

THE COURT: All right.

MR. THORNE:—which I'd like to file with the Court this morning. So I think we are prepared to present evidence, Your Honor, in addition to the affidavit that we filed along with the response.

THE COURT: All right. Mr. Baker, you may proceed.

From the probate court's statement that: "My understanding is what we're taking up today is the matters concerning the validity of the spousal waiver in this case," one would first assume that the court, initially, believed that it was taking up for trial the appellant's election to take against the will. This is so in that as we discuss, *supra,* the issue of the validity of the appellant's waiver was not a separate matter for the court's disposition, but an affirmative defense asserted by the respondents in seeking to defeat the appellant's election to take against the will.

■ Casting doubt on our assumption that the probate court, initially, believed that it was taking up for trial the appellant's election to take against Mr. Pittsenbarger's will is its statement that: "Well, if I have this right, I guess in my mind Norma Jean Pittsenbarger has filed her withdrawal of her waiver of right to elect, so I assume she's got the burden of going forward." As we noted, *supra,* the appellant's attempted withdrawal of her waiver was simply an evidentiary issue that went to the validity of her waiver of election, which in turn bore on her right to take against her deceased husband's will. Hence, the probate court's attempt to treat the appellant's withdrawal as a separate matter on which the appellant had the "burden of going forward" with the evidence, was in error. In any event, once the probate court was advised of the respondents' motion for summary judgment with respect to the issue of the validity of the appellant's waiver of election, it directed the respondents to proceed with their evidence, clearly indicating that it was proceeding on their motion for summary judgment. *See ITT Commercial Fin. Corp.,* 854 S.W.2d at 381 (stating that the movant bears the burden of making a *prima facie* case demonstrating the movant's entitlement to summary judgment).

The record reflects that the hearing before the probate court on January 30, 2003, continued throughout as commenced—a hearing on the respondents' motion for summary judgment, without the court's ruling on the motion or indicating that it was proceeding to a trial on the merits. Accordingly, at the conclusion of all the

evidence, appellant's counsel requested that the "motion for summary judgment be denied and that then, in an appropriate time, we'd proceed to the other motions on file." Having heard the evidence, the probate court took the matter under advisement, making the following docket entry: "Parties appear in person & with attorneys, to take up [respondents'] motion for summary Jdmt. & by agreement, issues over the validity of the spousal waiver of rights. Evidence heard. Cause taken under advisement." The record indicates that the only matter that was heard by the probate court on January 30, 2003, to take under advisement, was the respondents' motion for summary judgment in which they alleged, *inter alia,* that the appellant had waived her right to take against Mr. Pittsenbarger's will.

In its purported judgment of March 24, 2003, the probate court "ORDERED, ADJUDGED, and DECREED ... Respondents Motion For Summary Judgment be and is hereby overruled, as there were genuine issues of material fact to be decided." It then went on to declare that the appellant's waiver of election was valid and enforceable. Thus, despite the record, it appears that the probate court, in its "judgment," was entering a judgment on the merits, as if a trial had been conducted thereon, finally determining the validity of the appellant's waiver and effectively finding that her election to take against the will was barred.

 The probate court's purported judgment of March 24, 2003, clearly indicated that the respondents' motion for summary judgment was overruled. Thus, to enter judgment as it did with respect to the validity of the appellant's waiver of election, the probate court apparently was operating under the mistaken belief that it could treat the summary judgment hearing as a substitute for a trial on the merits.

That it could not do, absent an agreement to that effect, because the two are completely different in that the standards for being entitled to summary judgment and a judgment on the merits are completely different and thus, the procedures in arriving at the same are completely different. *See Gladden v. Kansas City,* 411 S.W.2d 228, 229–30 (Mo.1967) (holding that the trial court could not decide the merits of the case based solely on the parties' arguments regarding summary judgment). And, of course, a hearing on a motion for summary judgment and a trial on the merits as to the same matter cannot occur simultaneously inasmuch as the purpose of summary judgment is "to permit resolution of claims as early as they are properly raised in order to *avoid* the expense and delay of meritless claims or defenses and to permit the efficient use of scarce judicial resources." *ITT Commercial Fin. Corp.,* 854 S.W.2d at 376 (emphasis added).

 As a matter of due process, once the respondents' motion for summary judgment was overruled, absent a waiver of trial, for there to be a judgment on the merits as to the appellant's election to take against her deceased husband's will, there had to be a trial on the same. *Gladden,* 411 S.W.2d at 229–30; *see also Collet v. Collet,* 759 S.W.2d 876, 876 (Mo.App.1988). For there to be a valid waiver, the waiving party must knowingly and voluntarily choose to give up their protected right. *Malan Realty Investors, Inc. v. Harris,* 953 S.W.2d 624, 627 (Mo. banc 1997). The record indicates that there was no waiver of trial here. In fact, from the record it is clear that the appellant was under the assumption throughout that the only thing being heard on the date in question was the respondents' motion for summary judgment with respect to the issue of the validity of her waiver of election. Thus, the probate court's purported judgment, declaring that the appellant's waiver of

election was valid and enforceable, effectively barring her right to take against Mr. Pittsenbarger's will, was void as a violation of due process, *see Platt v. Platt,* 815 S.W.2d 82, 83 (Mo.App.1991) (holding that a judgment is void "if the court which rendered it ... acted in a manner inconsistent with due process of law"), which only left the court's denial of the respondents' motion for summary judgment. And, of course, the denial of a motion for summary judgment is not a final and appealable judgment such that there is nothing for us to review. *Stotts v. Progressive Classic Ins. Co.,* 118 S.W.3d 655, 668 (Mo.App. 2003).

## Conclusion

Because the probate court's purported judgment of March 24, 2003, declaring that the appellant's waiver of election was valid and enforceable, is void, and its order denying the respondents' motion for summary judgment is not a final and appealable judgment, we dismiss for a lack of jurisdiction.

LOWENSTEIN, P.J., and HOWARD, J., concur.